SMITH v DEPARTMENT OF STREET RAILWAYS, CITY OF
DETROIT

1. NEGLIGENCE—EVIDENCE—APPEAL AND ERROR.

A trial judge's ruling that there were no circumstances from
which an inference of negligence could be obtained was clearly
erroneous where the plaintiff bus passenger offered evidence of
an unexplained lurch and her resulting fall on a bus, coupled
with uncontroverted testimony showing icy weather conditions
and the bus driver turning the steering wheel fast around the
corner, and plaintiff's observation that it felt like the bus hit
something, and where the only other evidence offered was the
inconsistent, confused and unenlightening testimony of defend-
ant's bus driver.

2. NEGLIGENCE—EVIDENCE—RES IPSA LOQUITUR.

Although a facsimile of the doctrine of *res ipsa loquitur* has been
used on occasion by Michigan courts to decide an issue of
negligence, the doctrine has apparently not formally been
adopted in Michigan, and since courts do not always agree on
the application or effect of the doctrine, Michigan adheres to
traditional concepts of the law of negligence and of evidence
and looks to circumstantial evidence and what might be infer-
red or presumed from a proper foundation of facts.

Appeal from Wayne, Roman J. Snow, J. Submit-
ted Division 1 February 14, 1973, at Detroit.
(Docket No. 12623.) Decided April 23, 1973.

Complaint by Johnnie L. Smith against the De-
partment of Street Railways, City of Detroit, for
damages resulting from defendant's negligent op-

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur 2d, Carriers § 1154 *et seq.*
  29 Am Jur 2d, Evidence § 213.
  57 Am Jur 2d, Negligence § 137 *et seq.*
[2] 57 Am Jur 2d, Negligence § 136.
  58 Am Jur 2d, Negligence § 474 *et seq.*

eration of a bus. Judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*William B. Cope,* for plaintiff.

*William Dietrich* and *Michael F. Peters,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. Plaintiff Johnnie Louise Smith suffered injuries to her tailbone February 6, 1967, when she slid off her seat and landed on the floor on defendant's bus as the bus rounded a Detroit street corner. She sued defendant common carrier for alleged damages of $30,000. At the close of plaintiff's evidence defendant made a motion for a directed verdict[1] which was denied. The case then proceeded through defendant's evidence with the trial judge finally deciding for the defendant.

The main issue on appeal is the correctness of the trial judge's findings of fact. For clarity's sake we quote the judge's complete opinion:

*"The Court:* In order to render a verdict in this case, I have had to make a finding of fact and a conclusion of law.

"I find it is a fact that on the sixth day of February, 1967, that the plaintiff, Johnnie L. Smith, boarded a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Since this was a nonjury action, the motion for a directed verdict should have properly been called a motion to dismiss. *Dauer v Zabel,* 19 Mich App 198 (1969); GCR 1963, 504.2. The difference between the two motions is that on the latter motion a trial judge may weigh the evidence before him, unlike a motion for a directed verdict, where the trial judge's only task is to determine if there is no issue of fact raised by plaintiff's evidence for the jury to decide. *Cullins v Magic Mortgage, Inc,* 23 Mich App 251 (1970); *Serijanian v Associated Material & Supply Co,* 7 Mich App 275 (1967).

DSR bus at Ferry Park and Fourteenth Street and that there were several other people on this bus and that they had just crossed Grand River Avenue in the area of Columbia and where a short distance beyond the crossing at a point where the road is straight and level, the bus gave a lurch and the plaintiff fell on the floor.

"I further find that prior to and up to and including this time, *there was no evidence of any improper driving upon the part of the bus driver;* that it was snowing and the pavement was covered with snow and that he was operating the bus at a reasonable and proper speed and, as a matter of fact, not in excess of ten miles per hour; that the basis for the lurch can only be a conjecture on the part of this court because there is no factual situation appearing from the evidence to give any reason for the bus having lurched.

"All the evidence tends to show to this court that the bus driver was negotiating the terrain as a reasonable, careful person would negotiate the terrain under similar circumstances.

*"I find that there is no negligence upon the part of the bus driver and there are no circumstances from which an inference of negligence could be obtained.*

"I further find that the defendant is entitled to a verdict of no cause of action and I enter a verdict for the defendant." (Emphasis supplied.)

While recognizing our duty to affirm the trial judge's findings of fact unless they are clearly erroneous, we are forced to conclude that clear error does exist here, and therefore must reverse. GCR 1963, 517.1.

To begin, if there were "no circumstances from which an inference of negligence could be obtained" as the trial judge determined below, then he improperly denied defendant's motion for a "directed verdict" at the close of plaintiff's evidence. However, had he in fact directed a verdict for the defendant we would still need reverse here, since we disagree with the trial judge's ruling that there were "no circumstances from which an infer-

ence of negligence could be obtained". A brief review of the evidence substantiates our conclusion. Plaintiff testified that on the snowy morning of February 6, 1967, she got on one of the defendant's buses to go to work. She sat on the left-hand seat on the right-hand side directly behind the rear door of the fully loaded bus. She was not in a position to see the condition of the street where the bus was being driven. As the bus turned the corner and crossed Grand River Avenue, plaintiff testified she saw the driver turning his steering wheel very fast around the curve, and she felt the bus lurch, "like hit something like—it was something like a jar", throwing her out of her seat to the floor of the bus. The passenger next to her also slid slightly off his seat. She was helped by three persons back into her seat, and remained on the bus until the end of the line in order to get the driver's bus number. She continued on by cab to her job as a domestic servant, but left early in the afternoon to go to the hospital for treatment of her injuries allegedly suffered in the accident. The bus driver, Ernest Bell, testified he had been a bus driver for approximately five weeks at the time of the accident, and at that time he worked different routes every day. He remembered someone coming up to him at the end of the line, and telling him what had happened. He gave inconsistent testimony about whether he remembered the accident, at one point saying he remembered nothing, and at another saying to his knowledge there was no "lurch", and that he made the turn at less than ten miles an hour. To us plaintiff's testimony certainly provides the basis from which negligence might be inferred, especially since the only other evidence offered was the inconsistent, confused, and unenlightening testimony of the bus driver.

Plaintiff relied on an assertion of the doctrine of *res ipsa loquitur*[2] to reach the same conclusion that we have. While the doctrine of *res ipsa loquitur* has apparently not been formally adopted in Michigan, a reasonable facsimile of it has on occasion been used by some Michigan courts to decide an issue of negligence. *Rose v McMahon,* 10 Mich App 104 (1968); *Rohdy v James Decker Munson Hospital,* 17 Mich App 561 (1969). *Cf.* the analysis of the doctrine's applicability in Michigan in *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117 (1966); *Mitcham v Detroit,* 355 Mich 182 (1959). Unfortunately, courts don't always agree on the precise elements of the doctrine, or whether all elements need be present at once, or whether a showing of the existence of *res ipsa loquitur* raises a mere inference or a full presumption of negligence. We agree with Dean Prosser's suggestion that *res ipsa loquitur* "has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely". Prosser, Torts (3d Ed), § 39, p 217. The Court in *Gadde* at 125 saw through the pitfalls of the doctrine of *res ipsa loquitur* to reaffirm Michigan's adherence to the "traditional concepts of the law of negligence and of evidence", and to settle the controversy existing in that case by looking to circumstantial evidence and what might be inferred or presumed from a proper foundation of facts. We follow precisely the same course here in

[2] The four conditions for the substantive application of the concept of *res ipsa loquitur* are (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence, (2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant, (3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff, and (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. *Rohdy v James Decker Munson Hospital,* 17 Mich App 561 (1969).

deciding that the evidence of an unexplained lurch and resulting fall on the bus, coupled with uncontroverted testimony showing icy weather conditions and the bus driver turning the steering wheel fast around the corner, and plaintiff's observation that it felt like the bus hit something is sufficient to provide a basis from which an inference of negligence might have been drawn, contrary to the finding of the trial judge.

Since we reverse and remand for a new trial we have no need to reach other issues raised by plaintiff on appeal.

All concurred.