HERITAGE BROADCASTING COMPANY v WILSON
COMMUNICATIONS, INC

Docket No. 90381. Submitted June 16, 1987, at Detroit. Decided
    September 6, 1988.

Heritage Broadcasting Company and Wilson Communications,
    Inc., after completing negotiations over the sale of two televi-
    sion stations by Wilson Communications to Heritage Broadcast-
    ing and agreeing on the terms of the sale, signed a letter of
    intent to enter into a definitive agreement of sale within forty-
    five days of the date of the letter. Within the forty-five-day
    period, Wilson Communications decided not to sell its stations.
    Heritage Broadcasting brought an action against Wilson Com-
    munications in the Oakland Circuit Court. Following a bench
    trial which was bifurcated on liability and remedy, James S.
    Thorburn, J., a judgment for specific performance was entered
    in favor of plaintiff. Defendant appealed.

    The Court of Appeals *held:*

    1. Judged by an objective standard which looks to the express
    words of the parties and their visible acts, there was a meeting
    of the minds as to all material facts, including the legal import
    and operative effect of the letter of intent after the expiration
    of the forty-five-day period.

    2. The letter of intent constituted a valid contract to enter
    into a future contract. The letter of intent specified all the
    material and essential terms of the sale, leaving none to be
    agreed upon as the result of future negotiations. The definitive
    agreement would have added only the mechanics necessary to
    accomplish the conveyance.

    3. The trial court did not err in refusing, during the remedy
    portion of the trial, to permit defendant to present evidence of
    affirmative defenses consisting of lack of mutuality, unclean
    hands, mistake, intervening change in circumstances, and over-

REFERENCES

Am Jur 2d, Contracts §§ 18 *et seq.,* 240 *et seq.*

Am Jur 2d, Appeal and Error §§ 8700, 822.

See the Index to Annotations under Contracts; Specific Perfor-
    mance.

involvement of the court in the effectuation of the remedy. The first three defenses were disposed of against defendant in the liability portion of the trial. With regard to the last two defenses, in the absence of any supporting authority cited by defendant, this Court cannot review the trial court's ruling that these defenses were insufficient as a matter of law.

Affirmed.

WEAVER, J., dissented in part. She would remand the case to allow defendant to present its affirmative defenses of change in circumstances and overinvolvement of the court.

1. EQUITY — APPEAL — FINDINGS OF FACT.

The Court of Appeals reviews equity cases de novo but will not disturb the trial court's findings unless convinced that those findings are clearly erroneous or unless the Court of Appeals would have reached a different result had it been in the trial court's position.

2. CONTRACTS — MEETING OF MINDS — OBJECTIVE STANDARD.

There must be a meeting of the minds on all of the material facts in order to form a valid contract; a meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.

3. CONTRACTS — CONTRACT TO MAKE A CONTRACT.

To be enforceable, a contract to enter into a future contract must specify all of its material and essential terms and leave none to be agreed upon as the result of future negotiations.

4. APPEAL — PRESERVING QUESTION.

A statement of position without a supporting citation is insufficient to bring an issue before the Court of Appeals; a party should not leave it to the Court of Appeals to search for authority to sustain or reject his position.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Abba I. Friedman* and *Eric J. Flessland*), and *Wilson, Portnoy, Basso & Leader, P.C.* (by *Bruce O. Wilson*), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *J. Bruce Donaldson* and *Terrence E. Haggerty*), for defendant.

Before: Hood, P.J., and Weaver and M. War-
shawsky,* JJ.

Hood, P.J. On June 26, 1986, the Oakland Cir-
cuit Court granted plaintiff specific performance of
a contract in which defendant was to sell two
television stations to plaintiff. Defendant appeals
as of right.

Defendant is the owner of television station
wwtv and its satellite station, wwup-tv, located in
Cadillac and Sault Ste. Marie, Michigan, respec-
tively. Plaintiff is a corporation formed to acquire
and operate broadcast properties. In 1983, plaintiff
and defendant entered into negotiations for the
sale of defendant's stations to plaintiff. On October
16, 1983, Robert Smith, plaintiff's representative,
and David Olsen, defendant's representative, or-
ally agreed on a purchase price of $10.4 million,
with defendant retaining its accounts receivable
worth $600,000. They also agreed that the parties
would enter into a letter of intent, one provision of
which would be that defendant would not negoti-
ate with any other buyer for forty-five days, during
which the parties would seek to negotiate a mutu-
ally agreeable definitive agreement of sale.

The letter of intent was drafted on November 3,
1983. The pertinent parts of the letter state:

> The purpose of this letter is to confirm our
> understandings regarding the principal elements
> of the purchase by Heritage Broadcasting Com-
> pany or a company to be formed by Heritage
> Broadcasting Company or its controlling share-
> holder (The "Purchaser") of Television Broadcast
> Stations wwtv, Channel 9, Cadillac, Michigan, and
> wwup-tv, Channel 10, Sault Ste. Marie, Michigan,
> from Wilson Communications, Inc., (the "Seller").
> 1. The Seller will sell, and the Purchaser will

---

* Circuit judge, sitting on the Court of Appeals by assignment.

acquire all of the assets of the Seller used and useful in the operation of Stations WWTV and WWUP-TV, including all contracts, programming agreements and leases which the Purchaser and the Seller agree to have assigned to the Purchaser, the CBS Network Affiliation Agreements, Federal Communications Commission ("FCC") licenses, other auxiliary broadcast facilities, but not including the accounts receivable of the Seller, cash and cash equivalents (the "Assets").

\* \* \*

2. The obligation of the Purchaser to acquire the Assets shall be subject to the further conditon that the Purchaser and the Seller shall enter into a definitive agreement relating to the sale and purchase of the Assets as described in Paragraph 9 within a period of 45 days from the date of this letter.

\* \* \*

9. It is intended that the foregoing will be incorporated into a definitive agreement to be negotiated and entered into by the Purchaser and by the Seller.

\* \* \*

11. The Seller hereby agrees to deal exclusively with the Purchaser with respect to the sale of Stations WWTV and WWUP-TV during the forty-five day period following the first day as of which the Seller shall have executed this letter (the "Exclusive Period"). During the Exclusive Period, neither the Seller nor anyone acting on its behalf will solicit, or participate in discussions or consider offers relating to, any sale of Stations WWTV and WWUP-TV or the Assets, with any person or entity.

Defendant signed the letter of intent on November 3, 1983, and plaintiff signed it on November 4, 1983. Plaintiff commenced its investigation and verification of the books, records, and physical plan of the stations. On November 29, 1983, plaintiff's president and engineer visited the stations. In

the meantime, defendant's attorney began to draft a definitive agreement. In early December, plaintiff was informed by its engineer that there were problems with the station equipment. Defendant's attorney thereafter informed plaintiff's attorney that he had been instructed to put the drafting process "on hold" until the question as to whether the deal would go forward was clarified. Subsequently, after further negotiations, the parties decided to resume work on the definitive agreement.

On December 19, 1983, however, defendant terminated any further discussion of the definitive agreement. Defendant stated that the forty-five-day period had expired at midnight December 18, that the definitive agreement in its present form could not be signed by plaintiff, and that it was terminating negotiations. Defendant indicated that it intended to retain and operate its stations.

Plaintiff filed suit for specific performance. A bench trial was bifurcated on the issues of liability and damages. After the liability portion, the court found that a contract existed between the parties and that defendant had breached the contract. The court ruled that the letter of intent was a "contract to contract," and that it was binding because it contained all of the essential terms to be included in the final contract. The court held that the terms left to be agreed upon were not essential terms and therefore did not prevent the letter of intent from constituting a binding contract. The court further ruled that the parties intended to be bound by the letter of intent. The court found that defendant had breached the contract in three ways: first, assuming arguendo that after the forty-five-day exclusive period expired defendant could lawfully terminate, defendant breached one day prematurely because the agreement was not exe-

cuted by the seller until November 4; second, there is no express provision in the letter of intent stating that it expired within forty-five days unless a definitive agreement was reached, and nothing compelled a conclusion that such a definitive ·agreement was mandatory within forty-five days; and finally, defendant's failure to supply certain documents was an unreasonable "defect in defendant's performance of its contractual obligations" which had "the necessary effect of extending the time within which [the parties'] mutual obligations could be fulfilled." After the damages portion of the bifurcated trial, the court entered a judgment of specific performance against defendant. This Court subsequently granted a motion for immediate consideration and stay of the judgment pending appeal.

On appeal, defendant first claims that there was no "meeting of the minds" as to the legal import and operative effect of the letter of intent after expiration of the forty-five-day exclusive dealing period, and that therefore no binding agreement was formed on this issue. Citing 1 Restatement Contracts, 2d, §§ 17 and 20,[1] defendant claims that the undisputed evidence shows that the parties attached different meanings to what was to hap-

---

[1] 1 Restatement Contracts, 2d, § 17(1) states:

Except as stated in Subsection (2), the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.

1 Restatement Contracts, 2d, § 20 states:

(1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and

(a) neither party knows or has reason to know the meaning attached by the other; or

(b) each party knows or each party has reason to know the meaning attached by the other.

pen when the forty-five-day period expired and that plaintiff had reason to know that defendant considered the letter of intent to merely govern the stage of the relationship between the letter of intent and the definitive agreement, and not to be a binding contract. Defendant states that plaintiff drafted the letter so that if a definitive agreement was not entered into within forty-five days, plaintiff's obligations were ended but defendant had to continue good-faith negotiations, while defendant thought that both parties were discharged.

In equity cases, this Court reviews de novo, but we will not reverse the trial court unless we are convinced that its findings are clearly erroneous or we would have reached a different result had we occupied its position. *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church in the United States of America,* 148 Mich App 105; 384 NW2d 92 (1986), lv den 425 Mich 863 (1986).

In order to form a valid contract, there must be a meeting of the minds on all the material facts. *Fisk v Fisk,* 328 Mich 570, 574; 44 NW2d 184 (1950); *Smith v Neilan,* 44 Mich App 394, 397; 205 NW2d 186 (1973). A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind. *Siegel v Spinney,* 141 Mich 346, 350; 367 NW2d 860 (1985). In the instant case, using the objective standard, there is no showing that a meeting of the minds

(2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if

(a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or

(b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party.

did not occur. The evidence which defendant proffers shows only that defendant may have subjectively entertained a different interpretation of the letter's effect upon expiration of the forty-five-day period. Under Michigan law, this is insufficient to show that a meeting of the minds did not occur.

Next, defendant claims that the trial court erred in holding that the letter of intent constituted a "contract to contract" which is valid under Michigan law. A contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract. *Opdyke Investment Co v Norris Grain Co,* 413 Mich 354, 359; 320 NW2d 836 (1982). To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations. *Socony-Vacuum Oil Co v Waldo,* 289 Mich 316, 323-24; 286 NW 630 (1939). We agree with the trial court that there were no material and essential terms left to be agreed upon. As the trial court noted, the letter of intent identified the parties, the assets to be sold, the consideration, the schedule for payment, the handling of the accounts receivable, the rights and remedies of each party upon breach, and mutual termination rights if the closing did not occur within 360 days of the definitive agreement. The definitive agreement would have added only the mechanics necessary to accomplish the conveyance.

Finally, defendant claims that the trial court erred in refusing, during the remedy portion of the trial, to permit defendant to present evidence of affirmative defenses to specific performance. Defendant raised the affirmative defenses of lack of mutuality, unclean hands, mistake, intervening change in circumstances, and overinvolvement of the court in the effectuation of the remedy. As to

the first three, we agree with the trial court that they were disposed of against defendant in the liability portion of the trial. As to the defenses of change in circumstances and overinvolvement of the court, the court found them insufficient as a matter of law to prevent specific performance. On appeal, defendant cites no authority for the proposition that these are defenses to specific performance. A party may not leave it to this Court to search for authority to sustain or reject its position. A statement of position without supporting citation is insufficient to bring an issue before this Court. *Butler v DAIIE,* 121 Mich App 727, 737; 329 NW2d 781 (1982). Thus, we do not address this issue.

Affirmed.

M. WARSHAWSKY, J., concurred.

WEAVER, J. *(dissenting in part).* I agree with my colleagues that the letter of intent resulted in a contract which was valid under Michigan law, and that the trial court was correct in finding defendant's first three affirmative defenses to have been disposed of in the liability portion of the trial. However, I believe that defendant should be given the opportunity to present its remaining two affirmative defenses, change in circumstances and overinvolvement of the court, and argue them on the merits. MCR 7.216. I would remand in order to allow defendant to present its defenses.