STANTON v DACHILLE

Docket No. 112249. Submitted February 20, 1990, at Lansing. Decided
      November 19, 1990, at 9:01 A.M.

      Joseph E. Stanton, Wolf Chayt, and Thomas S. Werthmann, filed
      claims of interest in certain parcels of land sold by Mary E.
      Dachille, personal representative of the estate of Harry Dac-
      hille, deceased, to Rochester Hills Corporate Center Associates,
      Inc., alleging that Mary Dachille had agreed to sell the parcels
      to them. The plaintiffs, thereafter, brought an action in Oak-
      land Circuit Court against Mary Dachille for breach of contract
      and against Rochester Hills for tortious interference with the
      plaintiffs' contracts with Dachille, seeking specific performance
      of the purchase agreements. The defendants asserted that
      because there was no meeting of the minds of the parties with
      regard to the essential and material terms of the contracts,
      there were in fact no contracts. The defendants counterclaimed
      for slander of title. The trial court, Robert C. Anderson, J.,
      granted the plaintiffs' motion for summary disposition of the
      defendants' counterclaim. Following a bench trial, the court
      found that enforceable contracts for sale of the lots existed
      between the plaintiffs and the Dachille defendants, but that the
      plaintiffs had failed to prove their tortious interference claim.
      The plaintiffs appealed, and the defendants cross appealed.

      The Court of Appeals *held:*

      1. The proper measure of damages for the breach of the
      contract was the value of the property after platting. Accord-
      ingly, the trial court should have permitted the plaintiffs to
      present evidence regarding the value of the property after it
      was finally platted in August 1987.

      2. The trial court did not clearly err in finding that there was
      no tortious interference by Rochester Hills.

      3. The trial court properly found that there was a meeting of

REFERENCES

Am Jur 2d, Libel and Slander §§ 541, 544, 549; Statute of Frauds
      §§ 336, 337; Vendor and Purchaser §§ 375, 380, 383, 386.
See the Index to Annotations under Frauds, Statute of; Maps and
      Plats; Sale and Transfer of Property; Slander of Title; Surveys
      and Surveyors.

minds with respect to the essential and material terms of the sale contracts between Dachille and the plaintiffs.

4. The sales agreements, using the designations and descriptions contained in the preliminary plat, satisfy the statute of frauds, because there was an understanding of the size and location of the lots on the parcel and a recognition that there might be reasonable modifications made in the final plat.

5. The trial court properly refused to grant the defendants' request for rescission.

6. The trial court properly granted the plaintiffs' motion for summary disposition of the defendants' claim of slander of title, because there was no showing by affidavit or otherwise that the plaintiffs' claims of interest were filed with malice and an intent to injure the defendants.

Affirmed in part, reversed in part and remanded.

MacKenzie, J., dissenting, stated that the decision of the trial court should be reversed because the identification of the real estate to be purchased was so lacking that there was no meeting of the minds. There was nothing more than a provisional agreement to buy unspecified land in the future.

1. Damages — Contracts — Real Property.

The measure of damages for breach of a contract to sell real property which specifies that the sale is to be consummated when the plat for the land has been approved is the value of the property as platted even where the breach occurred as a result of the sale of the property to a third party prior to the land being platted.

2. Frauds, Statute of — Sale of Land — Description of Land — Preliminary Plats.

A contract to sell real property does not fail on the basis of the statute of frauds because the description of the land is made with reference to a preliminary plat where it is clear that there was an understanding between the parties of the size, location, and description of the land and a recognition that there might be reasonable modifications of the preliminary plat when the plat was finalized.

3. Actions — Slander of Title — Malice.

The elements of slander of title are falsity of statement and malice; malice may not be inferred merely from the filing of an invalid lien, rather there must be a showing that the invalid lien was filed with the intent to injure the party bringing the slander of title claim.

*Gordon & Green, P.C. (by Richard A. Green)*, for the plaintiffs and counter defendants.

*Jaffe, Snider, Raitt & Heuer (by Thomas J. Tallerico and Eric A. Linden)*, for the defendants and counter plaintiffs.

Before: NEFF, P.J., and MacKENZIE and JANSEN, JJ.

NEFF, P.J. In this breach of contract case, plaintiffs appeal as of right from a judgment entered by the circuit court in favor of plaintiffs and against defendants. Plaintiffs claim that the trial court erred in refusing to admit certain evidence and in finding that defendant Rochester Hills Corporate Center Associates, Inc., (RHCCA) did not tortiously interfere with plaintiffs' contract to purchase real estate.

Defendants cross appeal, claiming that the trial court erred in finding the existence of a valid contract and of a breach thereof. Defendants also cross appeal the trial court's finding that defendants could not rescind the contract, as well as the trial court's finding of damages and the dismissal of their slander of title claim.

We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

I

The property at issue was owned at one time by Harry Dachille, now deceased. His daughter, the personal representative of the estate, is Mary Dachille (Dachille). In 1985, Dachille's son, Gary Sorge, assumed primary responsibility for the management of the property. Harry Dachille had attempted to sell the property as a whole prior to

his death, and Sorge continued these efforts, equally unsuccessfully.

In April 1985, plaintiffs entered into three separate purchase agreements with Dachille respecting three parcels denoted on a preliminary plat. The agreements were drafted by Kent Clarke, an attorney and real estate broker acting for plaintiffs, with the assistance of Ron Wonboy, a real estate broker employed by Industrial Commercial Realty (ICR), who was acting as a broker for Dachille.

The terms and conditions of the three agreements were virtually identical with respect to all relevant matters. Each called for a cash sale at a price of $1.65 per square foot. Each provided that the closing take place after delivery of a title commitment by Dachille, but not sooner than ten days prior to the commencement of construction and after approval of EDC financing. The agreements listed as additional conditions the following:

a) Subject to soil boerings [sic] and conditions acceptable to buyer for construction of 20,000 sq. ft. building without special foundations.

b) Subject to obtaining a letter of inducement and EDC approved financing from the City of Rochester Hills.

c) Subject to final plat and survey.

Plaintiff Chayt's agreement also stated that the purchaser shall not be required to close until roads and utilities are to the lot and that the agreement was subject to the developer installing roads and utilities to the lot.

The agreements were signed by the individual plaintiffs on behalf of partnerships in formation, accepted by Dachille, and then signed by plaintiffs acknowledging receipt of the accepted offers.

The lots referred to in the agreements were as

laid out on a preliminary plat prepared for Dachille in approximately 1982. In August or September 1985, Dachille revised the preliminary plat, and changes were made in the size, numbering, and location of the lots, and in the location of the access road planned for the subdivision. There were several intermediate preliminary plats drawn up between August and October 1985. Plaintiffs were aware at the signing of the agreements that boundaries, acreage, road location, and other factors might change somewhat, and all plaintiffs accepted the changes made.

On January 24, 1986, Dachille's attorney sent a letter to ICR and to Kent Clarke in which Dachille repudiated the agreements. The letter stated that the City of Rochester Hills had rejected the proposed plat upon which the agreements were based and that a complete revision had been made. The letter further stated that Dachille had chosen not to complete platting the property and had decided to sell the property as a whole. Prior to the letter of rejection, Dachille had already contracted to sell the property to RHCCA.

In February 1986, plaintiffs filed "claims of interest" as to portions of the land.

Dachille conveyed title to the property to RHCCA on May 6, 1986. RHCCA continued platting the land and, on May 9, 1987, the Rochester Hills City Council approved the plat for the property. The final plat was recorded in August 1987.

II

Plaintiffs first contend that the trial court erred in refusing to allow them to present evidence regarding the value of the property after January 24, 1986, and, in particular, as of August 1987. We agree.

The facts of this case closely parallel those in *Solomon v Western Hills Development Co,* 88 Mich App 254; 276 NW2d 577 (1979); (*After Remand*), 110 Mich App 257; 312 NW2d 428 (1981), and we find the reasoning employed in that case persuasive. Although the plaintiff in *Solomon* did not treat the repudiation as an anticipatory breach as did plaintiffs in this case, we find that distinction to be irrelevant in applying the principles announced in *Solomon.*

Generally, in order to give the buyer in a breach of contract action the benefit of the bargain, damages are measured by the difference between the agreed price and the value at the time of breach. 110 Mich App 266-267. The tender of an anticipatory breach of contract does not affect this general rule of damages. 25 CJS, Damages, § 74, p 850. Anticipatory repudiation creates an immediate right of action even though it takes place long before the time prescribed for the performance and before conditions have occurred. 4 Corbin, Contracts, § 959, p 853.

An "anticipatory breach" does not refer to the duty not to repudiate a contract. Rather, it refers to the duty of rendering a performance for which the nonbreaching party bargained and which the breaching party has specifically promised. 5 Corbin, Contracts, § 1053, p 309. The measure of damages is the same whether the defendant's breach is or is not anticipatory. 5 Corbin, *supra,* p 310. Therefore, the value of the promised performance is to be determined at the time when performance was to be rendered. 5 Corbin, *supra,* pp 311-312. Damages for an anticipatory repudiation are to represent full compensation for the loss caused by depriving the plaintiff of the benefit of the bargain. 25 CJS, *supra,* pp 850-851.

A

In *Solomon,* the plaintiff entered into a purchase agreement for the sale of a building lot in a proposed subdivision. The agreement was to be consummated with an exchange of the deed and the purchase price at the time the plat was recorded. The developer later decided to abandon the project and attempted to return the plaintiff's deposit. The property was then conveyed to third parties who subdivided it and conveyed the plaintiff's lot to a good-faith purchaser who built a house on it. A suit for specific performance of the purchase agreement or, in the alternative, for damages, followed.

The trial judge in *Solomon* found the purchase agreement unenforceable because it did not specify a time for performance other than "when the plat is recorded." On appeal, this Court reversed and remanded, holding that there was a valid, enforceable agreement which required the seller to record the plat within a reasonable time. 110 Mich App 261-262; 88 Mich App 258. On remand, a bench trial was held which resulted in a damage award, since specific performance was impossible. 110 Mich App 262. The trial court held that breach of the agreement had occurred when the still unplatted land was sold to the third parties who later platted the property and sold off the lots.

The case returned to this Court after remand, and one of the questions for decision was the proper measure of damages. The Court after remand held that the plaintiff was entitled to the benefit of her bargain. The bargain was a *platted* lot in exchange for the purchase price. 110 Mich App 267. Most importantly, the Court held that, even though the land was not platted at the time of breach, the value of the land at the time of

breach was to be determined as though it were platted for purposes of determining damages in order to give the plaintiff the benefit of her bargain, if any, placing her in as good a position as she would have enjoyed had the defendants not breached the agreement. 110 Mich App 267-268.

B

*Solomon* is good law which applies to the facts of this case. We are also satisfied that the date of performance was sufficiently definite to avoid the rule that, where the date of performance is uncertain, the date for delivery will be assumed to be the date of repudiation. See *McJunkin Corp v North Carolina Natural Gas Corp,* 300 F2d 794, 801 (CA 4, 1961), cert den 371 US 830; 83 S Ct 43; 9 L Ed 2d 68 (1962). Plaintiffs are entitled to introduce evidence of the value of the property as platted, although at the time of breach by conveyance to a third party the property was not yet platted. This evidence obviously may include proof of the value of the property in August 1987 when the property was platted.

We therefore find that the trial court erred in refusing to allow plaintiffs to present evidence of the value of the land after the date of the repudiation. We reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

III

The trial court did not clearly err in finding that Rochester Hills Corporate Center Associates, Inc., had not tortiously interfered with plaintiffs' contracts to purchase the property from Dachille.

In making their claim of tortious interference

with the contracts, plaintiffs rely on *Dassance v Nienhuis,* 57 Mich App 422, 433; 225 NW2d 789 (1985). *Dassance* is no longer good law because the case upon which it relied, *Meyering v Russell,* 53 Mich App 695, 704-705; 220 NW2d 121 (1974), was reversed by our Supreme Court, 393 Mich 770 (1974).

The elements of tortious interference with a contract were set forth by this Court in *Feldman v Green,* 138 Mich App 360, 378; 360 NW2d 881 (1984), lv den 422 Mich 961 (1985):

> [O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.

Further analysis of the definition of malice is unnecessary here since the trial court found no tortious interference even under the much looser standard of *Dassance.* Moreover, the trial judge stated that he was going to accept the testimony of Gregg Orley with respect to this matter. This Court gives special deference to the trial court's findings where they are based on the credibility of witnesses. *In re Fritz Estate,* 159 Mich App 69, 76; 406 NW2d 475 (1987). We will not disturb the trial court's findings with respect to plaintiffs' claim of tortious interference with the contracts.

IV

We next consider whether contracts existed between plaintiffs and Dachille. The trial court properly found that contracts did exist between the parties.

A

Defendants first contend that there was no meeting of the minds regarding the essential and material terms of the contracts.

> In order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind. [*Heritage Broadcasting Co v Wilson Communications, Inc,* 170 Mich App 812, 818; 428 NW2d 784 (1988); citations omitted.]

Defendants point to Dachille's alleged interpretation of the "subject to" platting clause as an entitlement to sell the entire piece of land and discontinue her efforts to plat it, and plaintiffs' contrary interpretation of that clause as imposing an obligation on Dachille to plat the lots in a reasonable time. As plaintiffs point out, however, the terms of the contracts and Dachille's actions do not support defendants' claimed interpretation.

When Dachille repudiated the purchase agreements, she misrepresented that the plats had been "rejected." If she had understood the agreements to mean that she had an option to merely discontinue the platting, she would have been unlikely to so justify her repudiation, and could have merely stated that she had chosen to discontinue the platting.

Dachille's listing agreement with her broker also provided for the sale of individual lots. Numerous representations were made to plaintiffs that the platting procedure was "coming along." Gary Sorge, Dachille's son who managed the property, attended meetings with the City of Rochester Hills to discuss the preliminary plats and admitted that

he felt obligated to sell to plaintiffs. Defendants may now claim a different understanding, but have failed to show that the trial court erred in determining otherwise.

With regard to the lots, the transcripts are replete with indications that all parties were aware that the lots would change in size, shape, and location, to some extent. Plaintiffs' acceptance of the revised plat shown them confirms that there was a common understanding regarding the flexibility of the platting of the subdivision. The language of the agreement shows flexibility in its description of the lots. Again, defendants fail to show a significant variation in understanding.

B

Defendants also contend that plaintiffs failed to satisfy conditions precedent to the contract, namely, making soil borings and obtaining financing. Defendants claim that the phrase "subject to" means "if" in the context of the agreements, and, since the two conditions were not satisfied by plaintiffs, Dachille had no obligation to satisfy the platting condition. We disagree. The boring and financing conditions were for the sole benefit of plaintiffs, and defendants never inquired about plaintiffs' progress in satisfying either of those conditions. Moreover, there was no purpose in plaintiffs complying with either condition until the platting was complete.

The letter of repudiation also does not state that these conditions had not been met. Given the repudiation a few months after the signing of the agreements, it would be unreasonable to expect plaintiffs to obtain soil boring samples and financing. Further, plaintiffs testified at length about how they would not need the EDC financing and

how Ron Wonboy, an agent of Dachille, had been so informed. Sorge admitted that he knew that he was obligated by the agreements to sell the lots to plaintiffs and that he voluntarily chose not to continue the platting.

In *Lee v Desenberg,* 2 Mich App 365, 369; 139 NW2d 916 (1966), this Court quoted with approval from 17A CJS, Contracts, § 468, p 645:

Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and, where he prevents, hinders, or renders impossible, the fulfillment of a condition precedent or its performance by the adverse party, or is himself the cause of failure to perform the condition, he cannot rely on such condition to defeat his liability.

Here, Dachille voluntarily discontinued platting and then, when plaintiffs did not perform the conditions precedent to performance under the contracts because of her actions, Dachille claimed that she had escaped liability. This is untenable. Dachille's failure to continue the platting was the cause of plaintiffs' failure to perform the conditions, and defendants cannot rely on this to defeat their liability.

C

Defendants also claim that there was no mutuality of obligation. We disagree. Plaintiffs here clearly understood that, upon platting, they would be obligated to buy the lots. Whether they were obliged to perform the specific conditions inserted into the contract for their own benefit is irrele-

vant, because their obligation to purchase the land was clear and undisputed.

### D

Defendants further claim that the agreements did not satisfy the statute of frauds. Again, we disagree.

Defendants focus on the description of the lots in the original agreements which reference a preliminary plat. Although the property in such a document must be adequately described, *Kojaian v Ernst,* 177 Mich App 727, 731; 442 NW2d 286 (1989), extrinsic and parol evidence is admissible to supplement, but not contradict, the understanding of the parties. *Opdyke Investment Co v Norris Grain Co,* 413 Mich 354, 367; 320 NW2d 36 (1982).

> A description is sufficient if when read in the light of the circumstances of possession, ownership, situation of the parties, and their relation to each other and to the property, as they were when negotiations took place and the writing was made, it identifies the property. [*Domas v Rossi,* 52 Mich App 311, 314; 217 NW2d 75 (1974), quoting *Wozniak v Kuszinski,* 352 Mich 431, 436; 90 NW2d 456 (1958).]

Since the negotiations and initial agreements here were understood to refer to a tentative, preliminary plat, the descriptions are adequate in respect thereto. The testimony shows an understanding of the location, size, and description of the lots, although they were subject to reasonable modification by the final plat. The agreements at issue satisfy the statute of frauds.

### V

Defendants next contend that both parties were

mistaken with respect to material terms and that, therefore, rescission was available. We disagree.

> Rescission is an equitable remedy which is granted only in the sound discretion of the court. A court need not grant rescission in every case in which the mutual mistake relates to a basic assumption and materially affects the agreed performance of the parties. [*Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 31; 331 NW2d 203 (1982); citations omitted.]

Defendants' argument for rescission fails for several reasons. First, the trial court's grant or denial of rescission is in its sound discretion, and no showing of abuse thereof has been made to justify reversal. *Messerly, supra.*

Second, the facts and testimony simply do not support defendants' arguments. The parties had a mutual understanding about the location of the lots and no mutual mistake is shown. With regard to the time for platting, it is clear that all parties thought that it could take as little as a year and quite possibly more. Plaintiffs never expressed that the time taken was contrary to their understanding, but only that the failure to plat at all was in breach of the agreements.

Third, the trial court will not grant rescission unless the party requesting it is blameless. See *Messerly, supra,* and *Miller v Varilek (On Remand),* 129 Mich App 703, 704-705; 342 NW2d 94 (1983). The trial court's finding that Dachille breached the contract negates any such finding of innocence on her part. The trial court properly denied defendants' claim for rescission of the agreements.

VI

Defendants also contend that the trial court

erred in denying their motion for a directed verdict because plaintiffs did not submit any evidence of damages later than January 24, 1986.

At trial, defendants actually moved for "entry of judgment." A motion for a directed verdict is more properly made in a jury trial, while a motion to dismiss is used in a bench trial. *Smith v Detroit Dep't of Street Railways,* 46 Mich App 291, 292; 207 NW2d 924 (1973). The motion will be treated as one for dismissal on review. *Potes v Dep't of State Highways,* 128 Mich App 765, 770; 341 NW2d 210 (1983). The trial court's grant or denial of such a motion will not be reversed unless clearly erroneous. *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 389; 239 NW2d 380 (1976).

Defendants' motion was properly denied. First, since it was their motion which resulted in the exclusion of evidence of value past January 24, 1986, they will not be heard now to dispute the holding in their favor. Second, there was testimony from plaintiffs' expert that the value of the land increased dramatically as of January 24, 1986, and "beyond that point in time." That was sufficient evidence for the trial court to deny defendants' motion.

VII

Defendants finally contend that the trial court erred in granting plaintiffs' motion for summary disposition relative to defendants' claim for slander of title. We disagree.

MCL 565.108; MSA 26.1278 provides:

No person shall use the privilege of filing notices hereunder for the purpose of slandering the title

to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

The elements of slander of title are falsity of statement and malice. *Michigan Nat'l Bank-Oakland v Wheeling,* 165 Mich App 738, 744; 419 NW2d 746 (1988). Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. *Sullivan v Thomas Organization, PC,* 88 Mich App 77, 86; 276 NW2d 522 (1979).

Defendants alleged malice and an intent to injure defendants. The order granting plaintiffs' cross-motion does not contain specific findings, but dismisses the claim pursuant to plaintiffs' motion, which, with respect to this claim, was based on MCR 2.116(C)(10) and MCR 2.116(I)(2).

Defendants had the burden of showing that an issue of material fact existed with respect to their slander of title claim. See *Metropolitan Life Ins Co v Reist,* 167 Mich App 112, 118; 421 NW2d 592 (1988). Where the opposing party fails to produce affidavits or evidence establishing a material issue of fact, summary disposition is properly granted. *Young v Oakland General Hosp,* 175 Mich App 132, 138; 437 NW2d 321 (1989), lv den 434 Mich 893 (1990).

The unopposed affidavits of plaintiffs and others established that the descriptions contained in the claims of interest were directed at the specific lots

and were as accurate as possible. They also established that defendants refused to aid plaintiffs in clarifying the descriptions contained in the claims of interest. The trial court was justified in finding that no malice was shown, or could be shown, on the basis of the facts of the case.

VIII

Reversed in part, affirmed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

JANSEN, J., concurred.

MACKENZIE, J. *(dissenting.)* I would reverse. In my view, the agreements between plaintiffs and defendant Dachille did not constitute enforceable contracts.

It is well established that in order to form a valid contract, there must be a meeting of the minds on all essential terms. *Heritage Broadcasting Co v Wilson Communications, Inc,* 170 Mich App 812, 818; 428 NW2d 784 (1988). In this case, an essential term was clearly lacking in each of the purchase agreements, i.e., a valid identification of the real estate to be purchased by each of the plaintiffs.

Under the agreements, plaintiff Chayt was to purchase lot 15, plaintiff Werthmann was to purchase lot 16, and plaintiff Stanton was to purchase lot 17 of Dachille's proposed subdivision. However, it is apparent from the final plat that the locations of these lots were wholly speculative. According to their testimony, each purchaser was interested in a lot adjacent to a pond located in the center of the Dachille parcel, and each of the lots as shown on a preliminary plat met this criterion. In the

final plat, however, lot 15 was no longer adjacent to the pond; in fact, its location shifted from the northwest portion of the Dachille parcel to the northeast portion. Further, plaintiff Stanton wanted lot 17 because it was a corner lot as preliminarily platted. In the final plat, none of the lots was a corner lot.

It is also impossible to tell to which lot each plaintiff would be entitled were any of the plaintiffs or defendant Dachille to attempt to enforce the sales agreements. Plaintiff Chayt could logically claim rights to lots 15, 17, or 18 as finally platted, while plaintiff Werthmann could claim rights to lots 16 or 17, and plaintiff Stanton could claim rights to lots 15, 16, or 17.

A meeting of the minds is judged by an objective standard, looking at the express words of the parties and their visible acts, not their subjective states of mind. *Siegel v Spinney,* 141 Mich App 346, 350; 367 NW2d 860 (1985). In this case, an objective view of the evidence indicates that these parties reached no more than a provisional agreement that plaintiffs would at some point purchase unspecified real estate from defendant Dachille. No action for breach of this agreement arises, however, since a material term was left open for future negotiation. See *Socony-Vacuum Oil Co, Inc v Waldo,* 289 Mich 316, 323-324; 286 NW 630 (1939); *Heritage Broadcasting, supra,* p 819. Accordingly, I would reverse.