DUNITZ v. WOODFORD APARTMENTS CO.

1. Subrogation—Volunteer.
   Ordinarily, subrogation will not be accorded a purely volunteer.[1]

2. Same—Ground For Equitable Intervention Must be Shown.
   One who seeks to be subrogated must show some ground for equitable intervention.[2]

3. Same—Lienholder Not Entitled to be Subrogated to Title by Payment of Amount Due on Foreclosed Mortgage.
   A mortgage which has been foreclosed, the property sold at the mortgage sale, and a sheriff's deed given to the purchaser and deposited as provided by law (3 Comp. Laws 1915, § 14957) with the register of deeds, is not a prior recorded lien, incumbrance, or mortgage which section 14804 permits a mechanic's lienholder to pay off and be subrogated to the rights of the prior holder, but it is an equitable title which can be defeated only by redemption under section 14959.[3]

4. Same—Tender—Interest.
   Plaintiff, who purchased mechanics' liens, and tendered into court the amount due on a foreclosed mortgage under the mistaken belief that he was entitled to be subrogated to the title, while entitled to the return of his money, is not entitled to interest thereon.[4]

Appeal from Wayne; Webster (Arthur), J.   Submitted June 29, 1926.   (Docket No. 81.)   Decided July 22, 1926.

Bill by Harry Dunitz against the Woodford Apartments Company, the Dime Savings Bank, the Detroit Mortgage Corporation, Charles J. Higgins, trustee, and Charles J. Deland, receiver of Detroit Mortgage Corporation, to establish an interest in land.   From a decree dismissing the bill, plaintiff and all defendants

[1]Subrogation, 37 Cyc. p. 446; [2]Id., 37 Cyc. p. 371; [3]Id., 37 Cyc. p. 462; [4]Id., 37 Cyc. p. 446.

except the Dime Savings Bank appeal.    Modified and affirmed.

*Monaghan, Crowley, Reilley & Kellogg* and *Harold M. Shapero,* for plaintiff.

*Allan Campbell,* for defendant Detroit Mortgage Corporation.

*Joslyn, Joslyn & Joslyn* and *Patrick H. O'Brien,* for defendant Deland.

*Clark, Emmons, Bryant & Klein,* for defendant Woodford Apartments Company.

Snow, J.   A large and valuable apartment house on Woodward avenue, in the city of Detroit, known as Ford Manor, was in process of construction and nearing completion when the plaintiff, a builder, and interested in real estate, but having no connection whatever with the property, observed that there was some delay in the work and started an investigation of the situation with a view of acquiring ownership.   His investigation revealed that the Boulevard Realty Company had owned the land and had sold it, taking back a purchase-price mortgage in the sum of $40,500; that to erect the building the purchaser had succeeded in obtaining a bond issue from the Detroit Mortgage Corporation in the sum of $350,000, under a so-called first mortgage, but which in reality was a second mortgage, junior to the purchase-price mortgage mentioned; that the first mortgage had been foreclosed by advertisement and a sheriff's deed given to the mortgagee, the purchaser at the sale, and that the equity of redemption would very soon expire.   Plaintiff also learned that the Detroit Mortgage Corporation had failed and was in the hands of a receiver, and that there were no funds available to redeem, complete the building, or pay off some $60,000 of mechanics' liens filed against the property.

Plaintiff thereupon approached the Boulevard Realty

Company, the purchaser at the foreclosure sale, and offered to "buy the sheriff's deed," as he testified, but his offer was refused.   Failing in this, he further testified, he then turned his attention to the lienholders and secured from some of them assignments of their liens.   Meantime the receiver of the Detroit Mortgage Corporation, in an attempt to protect the lien of the bond-holders, and secure if possible an extension of time to redeem from the mortgage sale, applied to the Ingham county circuit court, in chancery, where the matter was pending, for leave to enter into an arrangement with defendant, Woodford Apartments Company, whereby the completion of the building might be accomplished, and the desired extension secured.   This application was granted by the court, and in pursuance of its order a contract was entered into between the receiver and the Woodford Apartments Company along these lines, the exact terms of which however we deem to be unimportant in the disposition of this case.   This contract was approved by the court, and, acting under it, the Woodford Apartments Company paid to the purchaser at the foreclosure sale the amount then due, and in return was given a quitclaim deed of the property which was then deeded the defendant Dime Savings Bank, which had furnished a portion of the money to take care of the foreclosed mortgage.   The Detroit Mortgage Corporation, some time prior to this, had obtained a quitclaim deed to the fee.

The plaintiff then, after buying up some of the mechanics' liens, in a further attempt to secure title to the property, tendered to the Dime Savings Bank and also to the Woodford Apartments Company the amount due on the foreclosed mortgage and demanded from each a deed, which was refused.   He took this action as a lienholder and claims his authority for so doing under and by virtue of section 14804, 3 Comp. Laws 1915, the same being a part of the mechanics' lien statute, and which reads as follows:

"Any person holding a lien for such labor or materials furnished upon any premises subject to any prior recorded lien, incumbrance or mortgage, may pay off any such prior lien, incumbrance or mortgage and shall thereupon be subrogated to all the rights of the prior holder of such lien, incumbrance or mortgage."

Plaintiff testified that he did this on the advice of an attorney in an attempt to be subrogated to the title. He frankly admitted that he went into the deal and bought the mechanics' liens, when he had no interest whatever in the property, for the purpose of cutting off the $350,000 bond mortgage, and securing the absolute title in himself.   He made the tender referred to and demanded the deed on the 10th day of July, 1925, which was the last day before the title under the sheriff's deed became absolute, and upon the same day he filed his bill of complaint herein, praying, among other things, to be decreed the owner of the premises in question in fee simple if no redemption under the mortgage was made, and he tendered into court the sum of $48,215.17.   From a decree dismissing the bill and ordering the repayment to the plaintiff of the amount paid into court, with interest at the rate of 6 per cent. per annum from July 10, 1925, the plaintiff and all the defendants except Dime Savings Bank have appealed.

The plaintiff's claim to this property being wholly statutory, and dependent entirely upon the section of the mechanics' lien law above quoted, a construction of the same as applicable to the facts in the instant case will determine what, if any, rights have accrued to him.   The statute (3 Comp. Laws 1915, § 14804) permits a person holding a lien for labor or materials which is subject to a prior recorded lien, incumbrance, or mortgage, to pay off the same and to become subrogated to the rights of the prior holder.   The plaintiff furnished no labor or materials to the construction of this building, but is the holder of liens only because

he interested himself in acquiring title to the property and purchased them from the actual owners to accomplish the purpose. Ordinarily, subrogation will not in any event be accorded a purely volunteer. Plaintiff had here no interest to protect until he voluntarily, and for surely no benevolent reason, but solely for the purpose of self-aggrandizement, injected himself into the already troubled affairs of those interested in this property. It is clear that one who seeks to be subrogated must show some ground for equitable intervention. *Bond* v. *Montgomery*, 56 Ark. 563 (20 S. W. 525), and *Richards* v. *Cowles*, 105 Iowa, 734 (75 N. W. 648). Notwithstanding the fact that the record brings the plaintiff dangerously near to being a volunteer without right of subrogation in any event, in construing the statute he will be regarded as a *bona fide* lienholder.

Is then a mortgage which has been foreclosed, the property sold at the mortgage sale, and a sheriff's deed given to the purchaser and deposited as provided by law with the register of deeds (3 Comp. Laws 1915, § 14957) a "prior recorded lien, incumbrance or mortgage," as mentioned in the lien statute, to which a lienholder would have a right of subrogation. A foreclosure of a mortgage extinguishes it. When the amount due under the mortgage is paid to the mortgagee by the purchaser at the sheriff's sale, the lien is destroyed, and the purchaser becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law. It is not a "lien, incumbrance or mortgage" which the purchaser at a foreclosure sale acquires, but it is an interest or title, equitable in character, and with nothing to be done on his part to make it absolute if it is not redeemed within the period of time prescribed by law. This equitable interest, so acquired by a purchaser at a foreclosure sale

236—Mich.—4.

by advertisement, may, during the period of redemption, be sold or assigned if the purchaser wishes.   But he cannot be compelled to sell or assign it, and neither his present equitable title, nor his prospective legal title, can be defeated excepting by redemption within the prescribed time and in the manner provided by statute (3 Comp. Laws 1915, § 14959).   See, also, *McCreery* v. *Roff*, 189 Mich. 558; *Sanderson* v. *Ressler*, 223 Mich. 232; and *Gage* v. *Sanborn*, 106 Mich. 269.

When plaintiff came into the affairs of this property and acquired a lienholder's status, the purchase price mortgage had been foreclosed and a sheriff's deed executed to the purchaser, who thus obtained the equitable title as above pointed out, and the fact that the mortgagee happens to be the purchaser in no way alters the situation.   There is no law giving a lienholder the right to compel an assignment to him of the title to property.   If one furnishing labor or material in the construction of a building permits a recorded mortgage to be foreclosed and sold to a bidder at the sheriff's sale without, before this is done, availing himself of the right to subrogation afforded him by the statute under discussion, he must of necessity lose all his rights thereunder.   It follows that the plaintiff was not entitled to a deed of the property after sale on foreclosure, and that he must be denied the relief prayed in his bill of complaint.   He is entitled to the return of his money tendered into court, but without interest.   He voluntarily put himself in the position he now is and should not be rewarded for his unwarranted interference.

The decree of the trial court is affirmed in all matters except as to the allowance of interest to the plaintiff. In this respect the decree will be modified in accordance with the above.   Costs to defendants.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.