WELLS FARGO BANK v COUNTRY PLACE
CONDOMINIUM ASSOCIATION

Docket No. 312733. Submitted February 12, 2014, at Detroit. Decided
March 18, 2014, at 9:00 a.m.

Wells Fargo Bank brought an action against Country Place Condo-
minium Association in the Oakland Circuit Court, asserting claims
of common-law slander of title, statutory slander of title, and
recording of documents with the intent to harass. Wells Fargo
gained title to a condominium unit through foreclosure proceed-
ings, obtaining a sheriff's deed on March 8, 2011. Wells Fargo's
title to the unit vested after the close of the redemption period on
September 8, 2011. On September 20, 2011, Country Place re-
corded an amended notice of a lien in the amount of $8,456.05 for
nonpayment of condominium assessments. Wells Fargo asserted
that under MCL 559.158 it was not responsible for association fees
that accumulated before September 8, 2011. Country Place filed a
countercomplaint asserting that Wells Fargo was required to pay
the outstanding debt plus late fees, legal fees, and costs. The
parties both filed motions for summary disposition. The court,
James M. Alexander, J., held that Wells Fargo was not responsible
for fees and costs that accumulated before it acquired title to the
condominium and that Wells Fargo acquired title to the condo-
minium when it purchased the property at the sheriff's sale. The
court dismissed Wells Fargo's claims and entered judgment in
favor of Country Place, requiring Wells Fargo to pay Country Place
$15,597.90, an amount representing assessments and late fees
that accumulated between March 8, 2011, and April 30, 2013, as
well as attorney fees and costs. Wells Fargo appealed.

The Court of Appeals *held*:

Under MCL 559.158, if the mortgagee of a first mortgage of
record obtains title to a condominium unit as a result of foreclo-
sure, that mortgagee is not liable for the assessments that became
due before the acquisition of title to the unit by that mortgagee. To
acquire title means to come into possession or control of the legal
evidence of a person's ownership of a certain parcel of land, usually
denoted by a deed, or to come into possession of the legal right to
control and dispose of property. After a sheriff's sale, the purchaser

comes into possession of an equitable title that is capable of being sold or assigned. The statutory language refers only to title, not absolute title. Because Wells Fargo obtained a sheriff's deed, which gave it equitable title, at the March 8, 2011 foreclosure sale, the circuit court properly ruled that Wells Fargo acquired title for purposes of MCL 559.158 on that date. Because Country Place possessed an honest belief in the validity of its claim for the unpaid association fees and advocated for a reasonable interpretation of the statutes, Wells Fargo's slander-of-title and intent-to-harass claims failed as a matter of law.

Affirmed.

CONDOMINIUMS — MORTGAGES — FORECLOSURE — SHERIFF'S SALE — ACQUISITION OF TITLE — LIABILITY FOR ASSESSMENTS.

Under MCL 559.158, if the mortgagee of a first mortgage of record obtains title to a condominium unit as a result of foreclosure, that mortgagee is not liable for the assessments that became due before the acquisition of title to the unit by that mortgagee; to acquire title means to come into possession or control of the legal evidence of a person's ownership of a certain parcel of land, usually denoted by a deed, or to come into possession of the legal right to control and dispose of property; the purchaser of a sheriff's deed at a foreclosure sale acquires equitable title on the date of the sale, and the mortgagee may be held liable for assessments that come due after the date of the foreclosure sale under MCL 559.158.

*Trott & Trott PC* (by *Charles L. Hahn*) for Wells Fargo Bank.

*Zelmanski, Danner & Fioritto, PLLC* (by *Tracy N. Danner*), for Country Place Condominium Association.

Before: HOEKSTRA, P.J., and MURRAY and RIORDAN, JJ.

MURRAY, J. This appeal arises from litigation between plaintiff, Wells Fargo Bank, and defendant, Country Place Condominium Association, regarding unpaid condominium association fees. After considering the parties' competing motions for summary disposition, the circuit court entered a judgment ordering plaintiff to pay defendant $15,597.90, an amount representing con-

dominium assessments and late fees for one condominium unit between March 8, 2011, and April 30, 2013, as well as attorney fees and costs. For the reasons that follow, we affirm.

## I. FACTS AND PROCEEDINGS

The legal dispute started when plaintiff filed a three-count complaint against defendant requesting the removal of a condominium lien that defendant had filed concerning a condominium unit in Northville.[1] According to the complaint, plaintiff had "acquired its title interest in the unit by virtue of foreclosing its first mortgage on the property" and obtaining a sheriff's sale deed "dated March 8, 2011," which plaintiff recorded on March 15, 2011. The complaint stated that plaintiff's interest in the condominium vested after the close of the redemption period on September 8, 2011. The complaint recounted that on September 20, 2011, defendant recorded an amended notice of a "lien for non-payment of condominium assessments" in the amount of $8,456.05, which identified plaintiff as the responsible owner of record. (Emphasis omitted.)

Plaintiff asserted that it was not responsible for association fees or attorney fees until after September 8, 2011, because under MCL 559.158 "the successors and assigns of the Sheriff Deed from a foreclosure of the first mortgage on a condominium unit, takes free and clear of all condominium liens and unpaid assessments as of the date of acquisition of title." Plaintiff further maintained that defendant had refused to discharge its recorded lien, which "constituted a cloud upon" plaintiff's title.

---

[1] The specific counts in the complaint were common-law slander of title, statutory slander of title, and recording of documents with intent to harass.

Defendant filed a countercomplaint alleging that it "duly levied assessments against" the condominium pursuant "to MCL 559.169 and the Condominium Bylaws . . . ." According to the countercomplaint, when plaintiff acquired its interest in the condominium, it neglected to seek from defendant a statement outlining any "unpaid assessments, interest, late charges, fines, costs, and attorney fees" that the condominium seller owed, as authorized by MCL 559.211(2). The countercomplaint added that plaintiff had defaulted on its duty to pay the outstanding assessments on the condominium of $10,840.80, $1,000 for late charges, and $4,086.71 in legal fees and costs. The countercomplaint requested the entry of a foreclosure judgment or money judgment against plaintiff for the unpaid assessments and an award of costs and attorney fees to defendant.

Because both pleadings raised purely legal issues, the parties filed competing motions for summary disposition. The parties agreed that plaintiff purchased the property at a March 8, 2011 sheriff's sale and recorded its sheriff's deed on March 15, 2011, and that defendant recorded its condominium lien against plaintiff on September 20, 2011. It was likewise undisputed that the prior owner of the condominium did not redeem the property.

After considering the parties' briefs and oral presentations, the court entered a thorough, well-written opinion and order deciding the motions. In its opinion, the court observed that the parties had premised their contentions on undisputed facts, and that the central issue of when the association fees were attributable to plaintiff was an issue of first impression. The court first held that plaintiff was not responsible for association fees assessed prior to when it acquired title to the condominium:

> We are left with an apparent conflict that both parties acknowledge is unresolved by any published caselaw. First,

[MCL 559.158] specifically states that the foreclosing mortgagee (Plaintiff in this case) is not liable for fees "prior to the acquisition of title." On the other hand, under [MCL 559.211], Plaintiff, **if considered a purchaser in the "sale or conveyance of a condominium unit,"** is liable for "any unpaid assessments against the condominium unit together with interest, costs, fines, late charges, and attorney fees incurred in the collection thereof."

Based on the plain language of the statutes, read in whole, the Court concludes that Section 158 controls for two reasons. First, the language of Section 158 is unconditional that the foreclosing mortgagee is not liable for any assessments prior to taking title. The statute does not state that this section applies except as provided in Section 211, nor is there any qualifying language. Had the legislature intended to except a Section 211 situation, it would have so provided. As a result, under the plain terms of the statute, Plaintiff, as the mortgagee of the first mortgage, is not liable to pay any fees or other costs that were chargeable prior to taking title.

Second, Section 211 does not apply because the Court finds that . . . assignment of the mortgage to Plaintiff [by Mortgage Electronic Registration Systems, Inc. (MERS)] is not a "sale or conveyance of a condominium unit" as provided in MCL 559.211(1). MERS did not sell or convey "the condominium unit" to Plaintiff. Rather, MERS simply assigned its interest in the mortgage to Plaintiff. Michigan Courts have long held that "[a]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." [*First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996)]. Just like MERS, Plaintiff possessed no right to sell or convey the condominium unit until after the foreclosure sale and redemption period expired. Only then, did Plaintiff have such right. Because MERS did not possess the right to sell the condominium unit, no such sale took place.

That conclusion did not end the inquiry, however. The court then moved on to a consideration of when plaintiff

acquired title to the condominium, ultimately holding that it was on March 8, 2011, the date it purchased the property at the sheriff's sale:

> The next issue is what date constitutes "acquisition of title" within the meaning of Section 158. Again, this term is not defined by the statute, and there appears to be no caselaw defining the same. Merriam-Webster defines "acquire" as "to get as one's own" or "to come into possession or control of often by unspecified means." On March 8, 2011, Plaintiff was the purchaser of said property at the Sheriff's Sale. On that date, Plaintiff came into possession or control of the unit.
>
> Defendant also argues that Plaintiff took possession on March 8, 2011. Citing *Gerasimos v Continental Bank*, 237 Mich 513, 519; 212 NW 71 (1927), Defendant argues that [the prior owner's] right to redeem the property was not an interest in the land. Rather, "the right of redemption is . . . a mere personal privilege given by statute to the mortgagor after the land has been sold under the mortgage." *Id.* at 518-519. As a result, [the prior owner's] right to redemption was not an actual, present interest in the land **unless and until** she exercised that right — which, she did not. As a result, the only party with an interest in the land was Plaintiff.
>
> In response, Plaintiff cites *Ruby & Assocs, PC v Shore Fin Servs*, 276 Mich App 110; 741 NW2d 72 (2007) [vacated in part on other grounds 480 Mich 1107 (2008)] for the notion that title vests upon expiration of the redemption period. Plaintiff's reliance on *Ruby*, however, is misplaced because it actually supports Defendant's argument. The *Ruby* Court reasoned:
>
>> The legal operation and effect of the sheriff's deed ultimately depends on the mortgagor's exercise of this right of redemption. "A purchaser's deed is void if the mortgagor . . . redeems" the premises by tendering amounts owing within the applicable statutory window. If not redeemed within this time frame, the deed becomes "opera-

tive," vesting in the grantee "all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage . . . ." *Id.* at 117-118 (internal citation omitted).

Under *Ruby*, because [the prior owner] did not exercise her right to redemption, Plaintiff's Sheriff's Deed dated March 8, 2011 was not voided, and Plaintiff's fee simple interest in the property relates back to that day. As a result, Plaintiff is the co-owner of the condominium unit and is responsible for paying the sums assessed by the owners' association under MCL 559.208(1).

As a result of these conclusions, the trial court dismissed plaintiff's claims of slander of title and recording of documents with intent to harass, and entered a final judgment in favor of defendant.

## II. ANALYSIS

Plaintiff's main challenge to the trial court's holding is based on the premise that under Michigan law a sheriff's deed to a condominium purchased at a foreclosure sale does not convey full title to the property until the original purchaser's right of redemption expires. Under that theory, the prior condominium owner's right of redemption expired in September 2011, which then triggered plaintiff's fee obligations. As a result, plaintiff argues, the circuit court incorrectly held plaintiff responsible for association dues that accrued beginning on March 8, 2011. We conclude otherwise. The trial court's ruling was correct because under Michigan law the purchaser of a sheriff's deed acquires a particular title to the property: an equitable title. And, once the right to redemption is not exercised, that equitable title automatically becomes full legal title that is effective back to the date of the sheriff's sale.

A. STANDARDS OF REVIEW

This Court reviews de novo a circuit court's decision on cross-motions for summary disposition. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim and should only be granted if: (1) the pleadings fail to state a claim on which relief may be granted and (2) no factual development could justify the claim for relief. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

> A motion for summary disposition pursuant to MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings, and is appropriately granted where the defendant has failed to state a valid defense to a claim. A defense to a claim is invalid for the purposes of MCR 2.116(C)(9) when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery. [*Payne v Farm Bureau Ins*, 263 Mich App 521, 525; 688 NW2d 327 (2004) (quotation marks and citations omitted).]

Instead of challenging the pleadings themselves, a motion brought pursuant to MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim," *Walsh*, 263 Mich App at 621, and should be granted if no genuine issue of material fact exists "and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record,

giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

The parties' competing motions for summary disposition involved underlying issues of statutory construction, which this Court considers de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). The *Whitman* Court reiterated the primary rules governing statutory construction:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [*Id.* at 311-312 (citations omitted).]

### B. THE MERITS

The circuit court concluded that, pursuant to MCL 559.158, plaintiff's obligation for unpaid condominium assessments began when plaintiff acquired title to the condominium unit on March 8, 2011. The entirety of MCL 559.158 reads:

> *If the mortgagee of a first mortgage of record* or other purchaser of a condominium unit *obtains title to the condominium unit as a result of foreclosure of the first mortgage, that mortgagee* or purchaser *and his or her successors* and assigns *are not liable for the assessments by the administering body chargeable to the unit that became due*

> *prior to the acquisition of title to the unit* by that mortgagee or purchaser and his or her successors and assigns. [Emphasis added.]

The circuit court correctly observed that neither MCL 559.158, nor any other section of the Condominium Act, MCL 559.101 *et seq.*, defines the phrase "acquisition of title" to the unit. Nor, as the trial court noted, is there any caselaw examining the meaning of that phrase.

Because there is no statutory definition of the phrase "acquisition of title" under MCL 559.158, the circuit court properly resorted to a dictionary, *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012), which defines "acquire" as "to come into possession or ownership of; get as one's own." *Random House Webster's College Dictionary* (1996). "Title" has a particular legal meaning,[2] and is defined in *Black's Law Dictionary* (7th ed) as "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself . . . ." It is also defined as the "[l]egal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such evidence." *Id.* The circuit court concluded that plaintiff had come "into possession or control of the unit" on March 8, 2011, when it obtained a sheriff's deed to the unit at the foreclosure sale. It was correct.

The circuit court's analysis and conclusion were consistent with the plain language of the statute, MCL 559.158, and caselaw from our Supreme Court that explains the nature of the title obtained at a sheriff's sale. First, the statute. As noted in the preceding

---

[2] See *Vodvarka v Grasmeyer*, 259 Mich App 499, 510; 675 NW2d 847 (2003) (courts may use legal dictionaries to define words that have a particular legal meaning).

paragraph, "acquire" means coming into possession or control of something, while "title" means the legal evidence of a person's ownership of a certain parcel of land, usually denoted by a deed. Therefore, as a result of the sale, plaintiff did come into "possession or control of" title to the unit, for it obtained and recorded a deed to the property that afforded it an ownership interest in that property.

Importantly, that ownership interest takes the form of an equitable title that is capable of being sold or assigned. For, according to the Court in *Dunitz v Woodford Apartments Co*, 236 Mich 45, 49; 209 NW 809 (1926), after the sheriff's sale "the purchaser becomes the owner of an equitable interest in the mortgaged premises," which is "an interest or title, equitable in character," that becomes absolute once the redemption period expires. Importantly, the *Dunitz* Court pointed out that the sheriff's deed purchaser can sell or assign the equitable title interest during the redemption period. *Id.* at 49-50. See also *Gerasimos v Continental Bank*, 237 Mich 513, 518-520; 212 NW 71 (1927). Thus, plaintiff did obtain an equitable title that conveyed an ownership interest in the property that was capable of being assigned or sold. See also *In re Young*, 48 BR 678, 681 (Bankr ED Mich, 1985) ("A foreclosure sale does effect a transfer of title: equitable title."). As we have previously stated, a "[f]oreclosure causes equitable title to vest in the purchaser, while legal title remains in the mortgagor until the redemption period expires." *Ruby*, 276 Mich App at 118.

It is true, as plaintiff points out, that the original mortgagor could physically remain in the condominium during the foreclosure period, as she still had legal title for the unit. *Ruby*, 276 Mich App at 118. But that fact does not alter our analysis of whether the sheriff's deed

purchaser acquires title prior to expiration of the redemption period, as the statute only speaks in terms of a "title," and "absolute title" is a separately defined term. See *Black's Law Dictionary* (7th ed), p 1493 (defining "absolute title" as "[a]n exclusive title to land; a title that excludes all others not compatible with it"). Thus, contrary to plaintiff's argument, the statute does not require that the purchaser have "absolute title," just a "title," and an equitable title is a form of title. *Dunitz*, 236 Mich at 49.[3]

Plaintiff contends that "the concept of relation back has nothing to do with the vesting date, but is merely a legal fiction/doctrine to show a continuity of title," and cites *Whipple v Farrar*, 3 Mich 436 (1855), and *Clark v Hall*, 19 Mich 356 (1869), in support of that proposition.[4] Our analysis of the statute is not reliant upon the relation-back doctrine. Nevertheless, it is true that the Supreme Court has repeatedly stated that once the redemption period expires, legal title to the property becomes "absolute" and relates back to the date of the purchase at the sheriff's sale. *Dunitz*, 236 Mich at 49; *Sanford v Cahoon*, 63 Mich 223, 226; 29 NW 840 (1886); *Stout v Keyes*, 2 Doug 184, 187 (Mich, 1845). Conse-

---

[3] We note that the Legislature has used the term "absolute title" in many different statutes, see MCL 124.759(3) and (12), MCL 211.78b, MCL 211.78c, MCL 211.78f through MCL 211.78h, MCL 211.78j, MCL 211.78k, MCL 211.78m, MCL 213.122, and MCL 322.551 as examples, but chose not to use that specific term in this statute. Thus, we interpret "title" to mean the broader definition of title as found in the dictionary, rather than the more specific type (absolute title) specified by the Legislature in other statutes. See *TMW Enterprises Inc v Dep't of Treasury*, 285 Mich App 167, 176; 775 NW2d 342 (2009).

[4] However, *Whipple*, 3 Mich at 447-448, actually contains no references to the relation-back doctrine. In *Clark*, 19 Mich at 372-373, the Court declined to apply the doctrine in the context of a title dispute partially dependent on a patent, but it did note the general principle as it relates to sheriff's deeds.

quently, the purchaser at the sheriff's sale is shown as the legal title owner on the day of the sale once the original mortgagor loses the opportunity to redeem. In other words, once the redemption period expires without any redemption, it is as if the purchaser had absolute legal title since the purchase date. Although we need not rely upon it, that general proposition supports our conclusion that plaintiff did obtain a "title" during the redemption period, though it was not an absolute legal title until after there was no redemption. Thus, when defendant filed a lien for unpaid assessments and fees after expiration of the redemption period, plaintiff was on record at that time as being the absolute title holder.

In light of the foregoing, we hold that plaintiff acquired title to the unit on March 8, 2011. Though that title was not absolute legal title until after expiration of the redemption period, plaintiff nonetheless had possession of a legal interest in the unit during the redemption period in the form of an equitable title.

Plaintiff also cites *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 222-223; 821 NW2d 503 (2012), a recent decision interpreting MCL 600.3236, the current provision that "describes the legal effect of a sheriff's deed obtained at a foreclosure sale upon the expiration of the applicable redemption period":

> The first clause under this provision describes the legal effect and operation of a deed upon the mortgagor's failure to exercise its statutory right of redemption following foreclosure. The first clause of MCL 600.3236 makes plain that if property is not redeemed within the applicable statutory window, then the deed becomes "operative," vesting in the grantee "all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage[.]"

*In re Receivership* is not inconsistent with *Stout* or *Sanford*. Those decisions clarify that the title held by the purchaser of a sheriff's deed at a foreclosure sale is an equitable one that can be sold or assigned, and that once no redemption occurs, it becomes an absolute title (as stated above in *In re Receivership*) that relates back to the sale date. Because plaintiff undisputedly obtained a sheriff's deed at a March 8, 2011 foreclosure sale, the circuit court properly ruled as a matter of law that under these undisputed facts plaintiff acquired title for purposes of MCL 559.158 on that same date.

Turning now to the specific tort claims, plaintiff argues that defendant's maintenance of the condominium assessments lien even after plaintiff completed its foreclosure on the unit was unlawful and slanderous. According to plaintiff, defendant's September 2011 amendment of the lien, which sought association fees extinguished by plaintiff's mortgage foreclosure, qualified as another slander of plaintiff's title. We conclude, as did the circuit court, that because defendant possessed an honest belief in the validity of its claim for the unpaid condominium association fees and advocated for a reasonable interpretation of the statutes, plaintiff's slander of title claims fail as a matter of law.

A common-law slander of title claimant "must show falsity, malice, and [pecuniary damages or] special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998). "The same three elements are required in slander of title actions brought under MCL 565.108." *Id*. The third count of plaintiff's complaint sought damages under MCL 600.2907a, which contemplates liability for a "person who violates . . . [MCL 565.25] . . . by encum-

bering property through the recording of a document without lawful cause with the intent to harass or intimidate any person . . . ."

"[T]he crucial element is malice." *Gehrke v Janowitz*, 55 Mich App 643, 648; 223 NW2d 107 (1974). A slander of title claimant must show some act of express malice, which "implies a desire or intention to injure." *Glieberman v Fine*, 248 Mich 8, 12; 226 NW 669 (1929). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v Dachille*, 186 Mich App 247, 262; 463 NW2d 479 (1990). A plaintiff may not maintain a slander of title claim if the defendant's "claim under the mortgage [or lien] was asserted in good faith upon probable cause or was prompted by a reasonable belief that [the defendant] had rights in the real estate in question . . . ." *Glieberman*, 248 Mich at 12.

Defendant asserted its entitlement to summary disposition on its countercomplaint because plaintiff had not stated a valid defense and concededly had made no payments toward the outstanding assessments or related expenses and fees on plaintiff's unit. Defendant theorized that (1) plaintiff was responsible for all assessments arising after it obtained title to the unit on March 8, 2011, the date of the sheriff's deed; and (2) plaintiff was responsible for preforeclosure assessments pursuant to MCL 559.211 because the foreclosure sale qualified as a conveyance under MCL 559.211(1) and MCL 565.35, and MCL 559.211(1) obligated a condominium purchaser to pay all outstanding assessments and related expenses and fees due from the purchase date. Defendant also noted that plaintiff failed to seek a written statement of association-related amounts due under MCL 559.211(2), and that subsection (2) pro-

vided that when a condominium purchaser failed to make this request, the purchaser became liable for all unpaid assessments and related expenses and fees.

Prior to our opinion today, only one published decision had addressed MCL 559.211, *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 261-263; 827 NW2d 379 (2012). In that decision we rejected an argument nearly identical to one of defendant's theories in this case: the plaintiff's assertion "that under MCL 559.211, [the defendant] is liable to [the plaintiff] for all unpaid assessments, interest, late charges, fines, costs, and attorney fees because [the defendant] is a 'purchaser' under MCL 565.34." *Id*. at 261. Initially, this Court noted that while MCL 565.34 defined " 'purchaser' as including an assignee of a mortgage," that definition did not extend beyond the chapter containing MCL 565.34, and thus did not apply to the Condominium Act. *Id*. We then concluded:

> Plainly, MCL 559.211 addresses liability for unpaid assessments, interest, late charges, fines, costs, and attorney fees "[u]pon the sale or conveyance of a condominium unit[.]" MCL 559.211(1). The present case does not involve the sale or conveyance of a condominium unit; rather, it involves [the defendant's] obtainment of a security interest in a condominium unit through the assignment of a mortgage. MCL 559.211 does not apply to an assignment of a mortgage of a condominium unit because it deals with the conveyance of a coowner's interest and not a mortgagee's interest. [*Id*. at 262-263 (alterations in original).]

Although *Coventry Parkhomes Condo Ass'n* tends to undercut one theory that defendant espoused in the circuit court, this Court issued its decision in *Coventry Parkhomes Condo Ass'n* on October 25, 2012, which was *after* defendant filed its countercomplaint in December 2011, *after* defendant pursued summary dispo-

sition beginning in June 2012, and *after* the circuit court entered its summary disposition ruling in August 2012.

The circuit court properly dismissed plaintiff's complaint pursuant to MCR 2.116(C)(10) on the basis of plaintiff's failure to prove malice because (1) no binding authority undermined defendant's legal contentions in the circuit court, (2) defendant's proffered positions in the circuit court rested on arguably rational interpretations of the Condominium Act, and (3) no other evidence of malice as a basis for defendant's conduct in enforcing its lien exists in the record.[5] With respect to defendant's countercomplaint, because the parties do not dispute that plaintiff made no payments toward the unpaid assessments on its unit, the circuit court's grant of summary disposition was proper under MCR 2.116(C)(10).

Affirmed.

No costs to either party, a question of public importance being involved. MCR 7.219(A).

HOEKSTRA, P.J., and RIORDAN, J., concurred with MURRAY, J.

---

[5] Although the circuit court cited both MCR 2.116(C)(8) and (10) in granting defendant summary disposition of plaintiff's complaint, the citation of subrule (C)(8) was inappropriate because the court considered the parties' documentary evidence in ruling on the motion. MCR 2.116(G)(5) (providing that "[o]nly the pleadings may be considered when the motion is based on subrule (C)(8) or (9)").