*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VALUE INVESTORS LLC,

      Plaintiff/Counterdefendant-Appellant,

v

JEFFREY YATOOMA, and CANNABIS
PROPERTY BROKERS, LLC,

      Defendants/Counterplaintiffs Third-
      Party Plaintiffs-Appellees,

and

190 N 20TH LLC, 190 N 20TH STREET INC, 477
MICHIGAN AVE, 477 MICHIGAN INC, 492
CAPITAL LLC, 716 STURGIS VENTURES LLC,
716 STURGIS ENTERPRISES INC, EAST
LANSING INVESTMENTS LLC, 314 MUNSON
AVE LLC, 1115 CORUNNA LLC, 1790 US-23 B
LLC, 1790 US-23 INC, 224 CENTER LLC, 1382 W
MICHIGAN LLC, 327 CAPITAL SW LLC, 306 W
COLUMBIA LLC, 306 W COLUMBIA AVE LLC,
1050 COLUMBIA LLC,

      Defendants,

and

NORMAN YATOOMA,

      Third-Party Defendant-Appellant.

UNPUBLISHED
April 18, 2024

Nos. 362564; 365694
Oakland Circuit Court
LC No. 2021-188165-CB

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In Docket No. 362564, plaintiff/counterdefendant-appellant Value Investors, LLC, and third-party defendant-appellant Norman Yatooma (collectively "appellants") appeal as of right the trial court's July 25, 2022 order entering judgment in favor of defendants/counterplaintiffs third-party plaintiffs-appellees Jeffrey Yatooma and Cannabis Property Brokers, LLC (collectively "defendants"), in the amount of $108,901.63 following a jury trial. In Docket No. 365694, appellants appeal by leave granted[1] the trial court's January 31, 2023 opinion and order quashing writs of garnishment filed by appellant Value Investors against defendant Jeffrey Yatooma. The appeals were consolidated by the same order granting leave.

In Docket No. 362564, appellants challenge a particular jury instruction at trial. In Docket No. 365694, appellants argue that despite the unfavorable jury verdict against them, they were nonetheless entitled to garnishments against defendant Jeffrey Yatooma, and the trial court erred by quashing the writs of garnishment several months after trial.[2] We disagree with appellants in both appeals and affirm.

## I. FACTS

Value Investors filed this action against defendants to enforce a settlement agreement that the parties entered into on January 8, 2021. The underlying dispute involved buying and selling real estate for use in Michigan's cannabis industry. In addition to other requirements, the agreement required Jeffrey to pay Value Investors a total of $6,142,196.46, to pay $142,196.46 on or before May 8, 2021, to execute a consent judgment and a promissory note in the amount of $6,142,196.46, and to execute an affirmation stating that the titles to "the CPB Properties" had not been transferred or encumbered. Regarding the consent judgment, the agreement stated as follows:

> Upon execution of this Agreement, the parties shall execute a Consent Judgment which shall be held by the Escrow Agent and shall not be filed with the Court unless there is a default on the payment terms set forth herein. The Consent Judgment shall be in the amount of $6,142,196.46, less any amounts that [Value Investors] has received pursuant to this Agreement . . . .

After defendants breached the settlement agreement, Value Investors filed this action against defendants alleging breach of contract and seeking both a declaratory judgment and a money judgment. Defendants filed a countercomplaint against Value Investors and a third-party complaint against Norman alleging breach of contract and slander of title. Defendants also sought a declaratory judgment and to compel arbitration regarding the parties' escrow agreement.

---

[1] *Value Investors LLC v Jeffrey Yatooma*, unpublished order of the Court of Appeals, entered June 8, 2023 (Docket No. 365694).

[2] While the writs for garnishment were nominally filed by appellant Value Investors, the interests of both appellants are essentially identical. Similarly, the interests of defendants Jeffrey Yatooma and Cannabis Property Brokers (CPB) are essentially identical as well. Thus, we generally will refer to "appellants" or "defendants" for ease of discussion, even when reference to a singular party would be more precise.

The parties filed motions for summary disposition, which the trial court decided in a June 21, 2022 opinion and order. The trial court granted in part appellants' respective motions for summary disposition. The trial court determined that Jeffrey breached the settlement agreement by failing to execute an affirmation contemporaneously with the agreement stating that the titles to the CPB Properties had not been transferred or encumbered. The trial court also determined that Jeffrey breached the agreement by failing to pay Value Investors $142,196.46 by May 8, 2021. The trial court determined that Jeffrey remitted the $142,196.46 payment two days late and paid the escrow agent rather than Value Investors as the settlement agreement required. The trial court concluded as follows:

> Simply put, there is no question of material fact that the Defendants defaulted twice under the Agreement - they paid late and they paid the wrong party. As such, under the clear and unambiguous terms of the Settlement Agreement, a Consent Judgment should enter.

The trial court denied summary disposition with respect to defendants' slander of title claim.

The case proceeded to a jury trial on defendants' slander of title claim, which the jury decided in defendants' favor and awarded them $108,901.63 in damages. On July 25, 2022, the trial court entered a judgment in defendants' favor in the amount of $108,901.63. The judgment stated that it resolved the last pending claim and closed the case. On August 15, 2022, appellants filed a claim of appeal in Docket No. 362564. Their only argument in that appeal challenges a particular jury instruction.

On September 21, 2022, Value Investors filed a motion to enforce a purported judgment in its favor. On October 3, 2022, the trial court denied the motion, stating that the motion did not actually seek to enforce a judgment, but rather, sought entry of a judgment to enforce the court's June 21, 2022 opinion and order. The trial court further stated as follows:

> Second, perhaps such a judgment should have been presented before the trial, or after the trial, but no such order was entered. Perhaps the Court/parties were too zealous in including the language closing the case in connection with the judgment involving the jury's verdict on the independent claims tried there, but now the case [is] before the Court of Appeals. To achieve the result requested, the Court would need to create a second judgment codifying the June 2022 Opinion and strike the language closing the case on the initial judgment. But MCR 7.208(A) divests the Court of any jurisdiction to do the same when a claim of appeal has been filed.

> Third, even if the Court were inclined to treat the June 2022 Opinion and Order as a judgment, the Plaintiff's proposed judgment includes terms (such as the 21 day deadline for compliance) that were not in the June 2022 order, again running afoul of the prohibition against modifying a judgment pending appeal.

On January 20, 2023, appellants filed 45 writs of nonperiodic garnishment. The garnishees were the numerous properties at issue. The writs stated that Value Investors obtained a judgment against Jeffrey in the amount of $5,699,696.46 on June 21, 2022. The writs also stated that the

accrued judgment interest was $229,809.78 and that the total of the unsatisfied judgment was $5,929,506.24.

On January 25, 2023, Jeffrey filed objections to the writs of garnishment and an emergency motion to quash the writs, arguing that they falsely stated that a judgment had been entered. Jeffrey sought an order to show cause why Norman or his attorney, or both, should not be held in contempt and sanctioned for filing writs that contained false statements. Jeffrey argued that a garnishment is proper only after a judgment is entered and that appellants knowingly falsely stated that a judgment in its favor had been entered.

Appellants opposed Jeffrey's motion, citing a portion of the trial court's August 29, 2022 order denying defendants' motion for reconsideration of the June 21, 2022 opinion and order. The cited portion of the August 29, 2022 order stated as follows:

> Furthermore, Jeffrey Yatooma's failure to timely pay $142,196.46 on or before May 8, 2021 was a material breach when he did not make the payment until May 10, 2021 and then paid the wrong party, resulting in Norman Yatooma and Value Investors not receiving the funds until November 2021. The breach was clearly substantial where Value Investors and Norman Yatooma did not receive the expected benefit and the breach resulted in the entry of a consent judgment.

Thus, appellants argued, the trial court recognized that it had entered a consent judgment against defendants. Appellants maintained that the July 25, 2022 judgment incorporated the June 21, 2022 opinion and order and that the June 21, 2022 opinion and order constituted a "decree" enforceable by a garnishment under MCL 600.112.

The trial court granted Jeffrey's motion in part and denied it in part. The trial court rejected appellants' argument that the June 21, 2022 opinion and order constituted a judgment. The trial court reasoned that the June 21, 2022 opinion and order did not identify a particular dollar amount and did not have "the language of finality closing the case." The trial court also rejected appellants' argument that the July 25, 2022 judgment incorporated the June 21, 2022 opinion and order, stating that the July 25, 2022 judgment did not reference the June 21, 2022 opinion and order. Regarding the trial court's reference to a consent judgment in the August 29, 2022 order denying defendants' motion for reconsideration, the trial court stated as follows:

> The reference to the consent judgment was admittedly poor wordsmithing on this Court's account. The statement would have been better stated had it provided: "and the breach resulted in the Plaintiff being entitled to the entry of a consent judgment." The August 29, 2022 Opinion and Order did not substantively transform the June 21, 2022 Opinion and Order into a judgment or a final decree.

> Why exactly the Plaintiff did not file the Consent Judgment it was entitled to is a mystery to this Court. The findings of the Opinion and Order of June 21, 2022 certainly entitled the Plaintiff the [sic] entry of the Consent Judgment, but it was never filed before the case was closed. Perhaps the Plaintiff should have sought recourse to reopen the case after the July Judgment was entered, but it did not do so. This Court has now lost jurisdiction to enter the Consent Judgment.

Presumably upon affirmance (or remand) by the Court of Appeals and/or Supreme Court, such a recourse could be pursued. But that is an issue for another day.

Thus, the trial court quashed the writs of garnishment. Nonetheless, the trial court opined that appellants had a good-faith basis to pursue the garnishments and denied Jeffrey's request for sanctions and an order to show cause against appellants' attorney.

These consolidated appeals are now before us.

## II. DOCKET NO. 362564

In Docket No. 362564, appellants argue that the trial court incorrectly instructed the jury. We disagree.

"This Court reviews claims of instructional error de novo." *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). "The trial court's jury instructions must include all the elements of the plaintiffs' claims and should not omit any material issues, defenses, or theories of the parties that the evidence supports." *Id.* "If, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury, no error requiring reversal occurs." *Id.* "Reversal based on instructional error is only required where the failure to reverse would be inconsistent with substantial justice." *Id.* at 211-212.

"We review de novo . . . questions of statutory interpretation." *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

The trial court instructed the jury, in relevant part, as follows with respect to the slander-of-title claim:

> This case involves a claim by CPB and Jeffrey Yatooma that Value Investors, LLC and Norman Yatooma slandered title to real property owned by CPB and Jeffrey Yatooma. CPB and Jeffrey Yatooma have the burden of proving A, that Value Investors LLC and/or Norman Yatooma falsely recorded documents in which they claim to have a right to interest in real property owned by CPB and/or Jeffrey Yatooma. B, that the publication was done with malice, meaning a desire or intention to injure. Malice could be either expressed or implied; that is, it may be inferred from any wrongful act done intentionally without just cause or excuse or even from statements made without probable cause. *Even if a document is initially recorded without malice, the refusal to discharge the document after circumstances warranting its discharge may be evidence of malice.* And C, that Jeffrey Yatooma and CPB suffered damages as the result. [Emphasis added.]

The first two questions posed to the jury on the verdict form were as follows:

> 1. Did Value Investors, Norman Yatooma, or their agent falsely record notices of the lis pendens against the real properties listed in the Settlement Agreement with malice?

2. Did Value Investors, Norman Yatooma, or their agent refuse to discharge the lis pendens against the real properties listed in the Settlement Agreement with malice?

The jury checked the box indicating "No" for the first question, but checked the box indicating "Yes" for the second question. The issue here is whether allowing the jury to find against appellants on the slander-of-title claim exclusively based upon the second question was legally erroneous.

MCL 565.108, the statute governing slander of title, provides as follows:

No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

"A common-law slander of title claimant must show falsity, malice, and pecuniary damages or special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 595; 848 NW2d 425 (2014) (cleaned up). "The same three elements are required in slander of title actions brought under MCL 565.108." *Id.* (quotation marks and citation omitted). Regarding malice,

a slander of title claimant must show some act of express malice, which implies a desire or intention to injure. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. A plaintiff may not maintain a slander of title claim if the defendant's claim under the mortgage or lien was asserted in good faith upon probable cause or was prompted by a reasonable belief that the defendant had rights in the real estate in question. [*Id.* at 596 (cleaned up).]

In *Anton, Sowerby & Assoc, Inc v Mr C's Lake Orion, LLC*, 309 Mich App 535; 872 NW2d 699 (2015), the plaintiff failed to release a lien and pursued wrongful litigation to enforce the lien. *Id.* at 548-550. This Court held that the plaintiff's "repeated failure to abide by the court's rulings and release the lien demonstrated malice," notwithstanding that the lien was valid when originally filed. *Id.* at 550.

In *Stonehenge Condo Ass'n v Bank of New York Mellon Trust Co, NA*, unpublished per curiam opinion of the Court of Appeals, issued July 24, 2018 (Docket No. 339106), the plaintiff argued that "a slander of title claim cannot be based on failure to discharge a lien that was recorded in good faith at the time it was recorded." *Id.* at 6. This Court disagreed, reasoning as follows:

The conduct that triggers a claim for slander of title is not the filing of a notice, but the "use of the privilege of filing notices" for the malicious purpose of slandering the title. See MCL 565.108. The statutory language indicates that a

properly recorded lien can support a claim for slander of title if the claimant leaves the lien in place when it no longer secures a valid claim and when another party's right to the property is thereby impaired. A knowing continuation of a lien that is no longer valid can constitute slander of title. For example, in [*Anton*], this Court held that the plaintiff's failure to release a once-valid lien and its pursuit of a misdirected lawsuit to enforce that lien contributed to a successful slander-of-title claim. Similarly, in this case, there is no apparent basis for allowing Stonehenge to continue to assert an invalid lien. [*Id*. at 7.]

We agree with the reasoning of *Stonehenge* that continuing to maintain a lien may constitute "malice" for the purposes of slander of title, even if the lien was properly filed in the first instance.[3] MCL 565.108 prohibits a person from "us[ing] the privilege of filing notices hereunder for the purpose of slandering the title to land." Continuing to maintain a notice without good faith for the purpose of slandering title seems to constitute "us[ing] the privilege of filing notices" for malicious purposes. That is, as noted by *Stonehenge*, "[t]he statutory language indicates that a properly recorded lien can support a claim for slander of title if the claimant leaves the lien in place when it no longer secures a valid claim and when another party's right to the property is thereby impaired." *Stonehenge*, unpub op at 7. Moreover, *Anton* expressly recognized that continuing to maintain a lien may constitute malice in certain cases, even if the lien was properly filed in the first instance. See *Anton*, 309 Mich App at 550. Thus, the second jury question in this case—asking whether appellants "refuse[d] to discharge the lis pendens against the real properties listed in the Settlement Agreement with malice"—was not legally erroneous. The trial court is affirmed on this issue.

### III. DOCKET NO. 365694

In Docket No. 365694, appellants argue that the trial court erred when it quashed the writs of garnishment. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision whether to quash a writ of garnishment." *Sys Soft Techs, LLC v Artemis Techs, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013). "The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019).

On June 21, 2022, the trial court entered an opinion and order addressing the parties' competing motions for summary disposition. In that document, the trial court stated, in relevant part:

---

[3] See also *Ramos v Bibi Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2020 (Docket No. 347751), at 7 ("[T]he conduct that triggers a claim for slander of title is not the filing of a notice, but the privilege of filing notices."). "Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

Value Investors alleges that because the Defendants did not timely pay the $142,196.46 to Value Investors, that they are entitled to a Consent Judgment in the amount of $5,699,696.46 plus attorneys' fees and costs under the terms of the [Settlement] Agreement.

* * *

Simply put, there is no question of material fact that the Defendants defaulted twice under the Agreement – they paid late and they paid the wrong party. As such, under the clear and unambiguous terms of the Settlement Agreement, a Consent Judgment should enter.

On July 25, 2022, following the jury trial, the trial court entered its final judgment, stating as follows:

This matter having come before the Court for a jury trial on Jeffrey Yatooma's and Cannabis Property Brokers, LLC's ("CPB") claim for slander of title against Norman Yatooma and Value Investors, LLC ("Value Investors"), and a jury having been convened and the trial having been conducted, and the jury having reached a verdict dated July 13, 2022, determining that Value Investors, Norman Yatooma, or their agent refused to discharge the *lis pendens* against the real properties listed in the Settlement Agreement with malice, and that Jeffrey Yatooma or CPB suffered damages in the amount of $108,901.63 as a result, and the Court being otherwise fully advised in the premises,

IT IS ORDERED AND ADJUDGED that Judgment is entered in favor of Jeffrey Yatooma and Cannabis Property Brokers, LLC, and against Norman Yatooma and Value Investors, LLC, in the amount of $108,901.63, and the same is hereby entered, with costs and attorney fees to be taxed according to law.

This order resolves the last pending claim and closes the case[.]

On August 15, 2022, appellants filed a claim of appeal, challenging the jury instruction discussed previously.

On September 21, 2022, appellants filed a motion to "Enforce Judgment Regarding Mortgage and Deeds." In relevant part, appellants asked the trial court to "enter a judgment enforcing the terms of its June 2022 Opinion" by stating that "Value Investors can enforce the $5,699,696.46 judgment through any means available under Michigan law."

On October 3, 2022, the trial court denied the motion, stating, in relevant part:

First, . . . the Motion is decidedly not asking to enforce a judgment. Instead, it actually asks this Court to enter a Judgment, albeit to codify the Court's prior June Opinion and Order regarding a motion for summary disposition. The Motion specifically states "Value Investors asks the Court to enter a judgment enforcing the terms of its June 2022 Opinion." It then attaches a proposed order granting the instant Motion that possesses most of the telltale signs of a judgment.

Second, perhaps such a judgment should have been presented before the trial, or after the trial, but no such order was entered. Perhaps the Court/parties were too zealous in including the language closing the case in connection with the judgment involving the jury's verdict on the independent claims tried there, but now the case [is] before the Court of Appeals. To achieve the result requested, the Court would need to create a second judgment codifying the June 2022 Opinion and strike the language closing the case on the initial judgment. But MCR 7.208(A) divests the Court of any jurisdiction to do the same when a claim of appeal has been filed.

Despite the unfavorable ruling from the trial court, appellants nonetheless filed about 45 writs of garnishment against defendants in January 2023, indicating on each SCAO-approved form that "Plaintiff received judgment against defendant for $5,699,696.46 on 6/21/2022."

Defendants promptly challenged the writs of garnishment, and the trial court quashed the writs by written order, reasoning as follows:

This Court's June 21, [2022] Opinion and Order only held:

"Simply put, there is no question of material fact that the Defendants defaulted twice under the Agreement – they paid late and they paid the wrong party. As such, under the clear and unambiguous terms of the Settlement Agreement, a Consent Judgment should enter."

That holding does not identify an amount (although the amount was referenced in the allegations cited in the opinion). Furthermore, the Order section of the June 21, 2022 Opinion and Order does not include a reference to the amount set forth in the Consent Judgment and actually does not even mention the Consent Judgment.

* * *

The Plaintiff also claims the [sic] "The July Judgment, which incorporates the June Order, is a valid final order." But, the July Judgment does not reference the June 21, 2022 Opinion and Order, the Consent Judgment, nor make any reference to the amount of the consent judgment that should enter. After all, the July Judgment was against the Plaintiff.

* * *

Why exactly the Plaintiff did not file the Consent Judgment it was entitled to is a mystery to this Court. The findings of the Opinion and Order of June 21, 2022 certainly entitled the Plaintiff the entry of the Consent Judgment, but it was never filed before the case was closed. Perhaps the Plaintiff should have sought recourse to reopen the case after the July Judgment was entered, but it did not do so. This Court has now lost jurisdiction to enter the Consent Judgment.

Presumably upon affirmance (or remand) by the Court of Appeals and/or Supreme Court, such a recourse could be pursued. But that is an issue for another day.

Appellants now argue that the trial court erred because the June 21, 2022 opinion and order, or the July 25, 2022 order, or both, provided a basis for their writs of garnishment. We disagree.

"Although garnishment actions are authorized by statute, MCR 3.101 governs postjudgment garnishment proceedings." *Velocity MRS Fund IV v Nextgen Pain Assoc & Rehab*, ___ Mich App ___; ___ NW2d ___ (Docket No. 358712, decided March 16, 2023), slip op at 2. "The court may exercise its garnishment power only in accordance with the Michigan Court Rules." *Nationsbanc Mtg Corp of Georgia v Luptak*, 243 Mich App 560, 564; 625 NW2d 385 (2000). MCR 3.101(D) states as follows regarding a request for and issuance of a writ of garnishment:

> The clerk of the court that entered the *judgment* shall review the request. The clerk shall issue a writ of garnishment if the writ appears to be correct, complies with these rules and the Michigan statutes, and if the plaintiff, or someone on the plaintiff's behalf, makes and files a statement verified in the manner provided in MCR 1.109(D)(3) stating:
>
> (1) that a *judgment* has been entered against the defendant and remains unsatisfied;
>
> (2) the amount of the *judgment*; the total amount of the postjudgment interest accrued to date; the total amount of the postjudgment costs accrued to date, which may include the costs associated with filing the current writ of garnishment; the total amount of the postjudgment payments made to date, and the amount of the unsatisfied judgment now due (including interest and costs), which may include the costs associated with filing the current writ of garnishment;
>
> (3) that the person signing the verified statement knows or has good reason to believe that
>
> (a) a named person has control of property belonging to the defendant,
>
> (b) a named person is indebted to the defendant, or
>
> (c) a named person is obligated to make periodic payments to the defendant.
>
> (4) whether the garnishee is to make all payments directly to the plaintiff or the plaintiff's attorney or to send the funds to the court. [Emphasis added.]

Accordingly, because the court rule uses the term "judgment," a writ of garnishment must necessarily be based upon an underlying judgment.

The parties dispute whether the trial court entered a judgment granting relief in favor of appellants. Appellants argue that the July 25, 2022 order incorporated the June 21, 2022 opinion

and order and that the July 25, 2022 order was a "final judgment" appealable by right under MCR 7.202(6)(a)(*i*) because it was "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." Alternatively, appellants argue that the June 21, 2022 opinion and order was a "judgment" or, at a minimum, a "decree" and that, under MCL 600.112, a "judgment" for the purposes of garnishment includes a decree. Defendants, on the other hand, argue that the June 21, 2022 opinion and order was not a judgment and that the trial court did not err by quashing the writs of garnishment because no judgment was entered against them. Defendants also argue that the writs failed to account for about $3 million that they have already paid to appellants.

"A 'judgment' is 'a court's final determination of the rights and obligations of the parties in a case.' " *Acorn Inv Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 351; 852 NW2d 22 (2014), quoting *Black's Law Dictionary* (9th ed 2009). Here, the trial court did not enter a judgment determining the parties' rights and obligations with respect to appellants' claims against defendants. At most, although the June 21, 2022 opinion and order stated that a consent judgment should be entered because defendants defaulted under the settlement agreement, no consent judgment actually was entered.[4] Further, MCR 2.602(A)(3) provides that "[e]ach judgment must state, immediately preceding the judge's signature, whether it resolves the last pending claim and closes the case. Such a statement must also appear on any other order that disposes of the last pending claim and closes the case." Thus, MCR 2.602(A)(3) indicates that a "judgment" must include a reference to whether it resolves the last pending claim and closes the case. No such language was included in the June 21, 2022 opinion and order. Consequently, we conclude that the June 21, 2022 opinion and order was not a "judgment" and therefore could not provide the basis for the writs of garnishment.

Similarly, the July 25, 2022 order was not a "judgment" that could provide the basis for the writs of garnishment. Although the July 25, 2022 order was, by its terms, a "final judgment," the order did not establish that appellants were entitled to monetary relief from defendants in a certain amount. See *Acorn Inv Co*, 495 Mich at 351. Further, although the July 25, 2022 order arguably incorporated the June 21, 2022 opinion and order, see *Washington v Starke*, 173 Mich App 230, 241-242; 433 NW2d 834 (1988), the June 21, 2022 opinion and order did not itself establish that appellants were entitled to monetary relief from defendants in a certain amount. As the trial court accurately observed after trial, the pertinent holding in the June 21, 2022 opinion and order "does not identify an amount (although the amount was referenced in the allegations cited in the opinion)." Thus, whether the June 21, 2022 opinion and order is a "decree," as

---

[4] In any event, it does not appear that a consent judgment would have been the appropriate remedy. The settlement agreement required the parties to execute a consent judgment to be held in escrow and to be filed with the court if defendants defaulted, but appellants claim that Jeffrey refused to execute the consent judgment. Thus, it does not appear that a consent judgment exists.

appellants argue, is beside the point because it did not determine the monetary obligations of defendants.[5]

To summarize, under MCR 3.101, a writ of garnishment only may be based upon a "judgment." In this case, neither the June 21, 2022 opinion and order nor the July 25, 2022 order, standing alone or in conjunction with each other, constituted a "judgment" for the purpose of garnishment. As a result, the trial court did not abuse its discretion by quashing the writs of garnishment. Further, as the trial court was aware, the fact that appellants had filed a claim of appeal in August 2022 divested it of jurisdiction to subsequently "amend" the final judgment to reflect the fact that defendants owed a particular monetary obligation to appellants. See MCR 7.208(A). Therefore, the trial court is affirmed on this issue.

## IV. CONCLUSION

In Docket No. 362564, the trial court did not err by instructing the jury that it could find that appellants were liable for slander of title on the basis that they failed to discharge a lien. In Docket No. 365694, the trial court did not abuse its discretion by quashing the writs of garnishment. We affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[5] MCL 600.112 of the Revised Judicature Act provides that "[t]he term 'judgment,' as used in this act, includes decree." Appellants suggest that a "decree" is a type of court order that is inferior to a "judgment." *Black's Law Dictionary* (10th ed) primarily defines "decree" as "a judicial decision in a court of equity, admiralty, divorce, or probate—similar to a judgment of a court of law." Thus, we doubt that the term "decree" bears a significant difference from the term "judgment" in this context. Instead, the Legislature likely enacted MCL 600.112 as a "belt-and-suspenders" approach to ensure that a court order nominally referred to as a "decree" would be treated as a "judgment."