# STATE OF MICHIGAN

# COURT OF APPEALS

BOBBIE G. PARR,

       Plaintiff/Counter Defendant-
       Appellant,

v

ROSALIE ANNE PARR,

       Defendant-Counter Plaintiff,

and

ANDREW JOHN PARR and JULIE ANN PARR,

       Defendants/Counter Plaintiffs-
       Appellees.

UNPUBLISHED
April 23, 2015

No. 319765
Sanilac Circuit Court
LC No. 12-034493-CK

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

In this property dispute amongst family members, plaintiff/counter-defendant, Bobbie G. Parr (plaintiff), appeals as of right the trial court's grant of summary disposition in favor of defendants/counter-plaintiffs (defendants) Andrew John (John) and Julie Ann Parr[1] regarding plaintiff's quiet title claim. Plaintiff also appeals as of right the judgment against him following a jury trial on defendants' counterclaim for slander of title and abuse of process. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal arises out of the use and disposition of multiple parcels of property in St. Clair and Sanilac Counties, as well as Parr Dairy LLC, a dairy farm on one of the parcels (together referenced as Parr Farms). The parties were involved in running the farm, along with Jeffrey Parr and Daniel Parr, who are plaintiff's sons and defendant John's brothers. The instant

---

[1] Although listed as a defendant/counter-plaintiff, Rosalie Ann Parr, is not a party to this appeal because she was dismissed pursuant to a stipulation. Hereinafter, she will be referred to by her name, rather than her party designation.

case concerns related property consisting of a 240-acre parcel of land and home built thereon in St. Clair County, "J & J Farms" (the dispute parcel). According to a recorded deed and mortgage in the lower court file, defendants acquired the disputed parcel pursuant to a United States Department of Agriculture Farmers Home Administration (FHA) quitclaim deed on June 30, 1987; they also entered into a $96,000 mortgage on the disputed parcel.

Although defendants were the only parties listed on the deed and mortgage, plaintiff claimed ownership of the disputed parcel. He maintained that he and his now ex-wife, Rosalie Ann Parr, arranged for defendants to take the deed to the property as a "convenience" in order to take advantage of favorable FHA purchase terms, including a waiver of closing costs. According to plaintiff, he and Rosalie paid to renovate the home on the land, and that this was part of defendants' compensation as employees of Parr Farms. He also maintained that he paid all of the expenses related to farming operations on the property since 1987, and that the crops grown on the property were used for feed on Parr Farms or that they were sold and the profits were given to Parr Farms.

In approximately 2009, the Parr family began looking for ways to sell the family farm to the Parr sons, Jeffrey, Daniel, and defendant John. For reasons not pertinent to this case and that were disputed by the parties below, such a sale did not materialize as originally intended. In 2011, the family prepared a document entitled "settlement agreement" for the sale, but the sale was never effectuated. Plaintiff alleged that Rosalie and defendant John had second thoughts, leading to the demise of the proposed sale.

On April 19, 2012, plaintiff filed a two-count complaint against Rosalie and defendant John. Count I pertained to the aforementioned settlement agreement. As an alternative, Count II requested that if Rosalie and defendant John did not sign the agreement, then defendant John should be forced to deed the disputed parcel "back" to plaintiff. Plaintiff filed a notice of lis pendens on the property the same day he filed his complaint. On May 24, 2012, plaintiff filed an amended complaint that added defendant Julie to the action, removed the request that the court order the parties to sign the settlement agreement, and contained a count asking for partition of the Parr Farm property, which he owned with Rosalie as tenants in common.

Defendants moved for summary disposition and filed a counterclaim, raising claims of abuse of process, common law and statutory slander of title, and breach of contract/quantum meruit. Rosalie also filed a counterclaim against plaintiff; that counterclaim was later dismissed, along with plaintiff's claims against Rosalie, pursuant to a settlement on May 16, 2013.

Subsequently, the trial court granted summary disposition to defendants on Count II of plaintiff's complaint, which sought to compel defendants to give the disputed parcel of land to plaintiff. The trial court ruled that summary disposition was appropriate because there was no writing evidencing plaintiff's alleged interest in the land so as to satisfy the statute of frauds, that the statute of limitations on any such action had expired, and that there was no genuine issue of material fact as to whether plaintiff had any right to take the disputed parcel. The trial court entered a written order granting summary disposition pursuant to MCR 2.116(C)(7) and (C)(10).

Defendants' counterclaims against plaintiff proceeded to a jury trial on October 29, 2013. With respect to the issues on appeal, both defendants testified concerning how plaintiff's threats,

his lawsuit, and the accompanying notice of lis pendens had affected them personally, and had resulted in legal fees and other financial detriment. Defendant Julie testified that, although she did not know of anyone who personally saw the notice of lis pendens, because she lived in a small town, she had been confronted about the suit and plaintiff's actions by family members and acquaintances. She avoided going into town in order to avoid questions about the matter. Defendants also testified about how the legal proceedings had affected their daughters, which had in turn affected them. Defendant Julie's mother, Pearl Lung, also testified about these effects.

Following trial, the jury found in defendants' favor, awarding $50,000 in special damages as well as $50,000 in damages for emotional pain and suffering. On December 2, 2012, the trial court entered judgment in favor of defendants in the amount of $102,789.37, representing the jury's verdict, plus interest and costs.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred when it found that that no material question of fact existed concerning ownership of the disputed parcel. In raising this issue, plaintiff recognizes that the trial court granted summary disposition based on three grounds—under (C)(7) based on both the statute of limitations and the statute of frauds, and under (C)(10) because there was no genuine issue of material fact—but he fails to make any meaningful argument regarding the propriety of granting summary disposition based on the statute of limitations.[2] Because he failed to address the trial court's ruling in this regard, we could decline to even consider his arguments. See *Hanlin v Saugatuck Twp*, 299 Mich App 233, 249; 829 NW2d 335 (2013) ("When an appellant fails to dispute the basis of the trial court's ruling, the Court need not consider granting the appellant the relief [he] seeks."). Notwithstanding this unchallenged additional ground for dismissal, we disagree with plaintiff's contention that material questions of fact prohibited a grant of summary disposition. Our review is de novo. *Maiden v Rozwood,* 461 Mich 109, 118, 597 NW2d 817 (1999).

The statute of frauds requires a written agreement to support the sale of real property under MCL 566.108, which provides:

---

[2] Had plaintiff elected to challenge the trial court's grant of summary disposition on this ground, we would have affirmed the trial court's ruling because the statute of limitations had long since expired when plaintiff filed his lawsuit.

Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing: Provided, That whenever any lands or interest in lands shall be sold at public auction and the auctioneer or the clerk of the auction at the time of the sale enters in a sale book a memorandum specifying the description and price of the land sold and the name of the purchaser, such memorandum, together with the auction bills, catalog or written or printed notice of sale containing the name of the person on whose account the sale is made and the terms of sale, shall be deemed a memorandum of the contract of sale within the meaning of this section.

"[T]he statute of frauds precludes an oral promise from forming the basis of a claim to an interest in real property, even when estoppel is alleged." *Kitchen v Kitchen*, 465 Mich 654, 660; 641 NW2d 245 (2002). "Simply put, therefore, a contract for the sale of land must, to survive a challenge under the statute of frauds, (1) be in writing and (2) be signed by the seller or someone lawfully authorized by the seller in writing." *Zurcher v Herveat,* 238 Mich App 267, 277; 605 NW2d 329 (1999). Here, plaintiff did not present a writing in opposition to defendants' motion for summary disposition, nor does he provide such a writing on appeal. Instead, plaintiff references an "understanding" that the disputed parcel was to belong to him. This, in spite of the fact that the only written agreements on the record concerning the disputed parcel—the deed and mortgage—only reference defendants as the owners of the property. As such, we see no basis for overturning the trial court's dismissal based on the statute of frauds under MCR 2.116(C)(7).

For the first time on appeal, plaintiff asserts that the doctrine of part performance excuses the lack of a writing in this case. The doctrine of part performance can remove an agreement from the statute of frauds. See, e.g., *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991). Because plaintiff never raised this argument before the trial court, we need not consider it in reviewing the trial court's summary disposition decision. See *In re Leete Estate*, 290 Mich App 647, 655; 803 NW2d 889 (2010). Moreover, plaintiff has not pointed to any documentary evidence available at the time of the trial court's decision to give guidance concerning any agreement to which the alleged part performance was relevant. We find no error in the trial court's grant of summary disposition.

## III. EVIDENTIARY RULINGS AT TRIAL

### A. EXCLUSION OF EVIDENCE

Plaintiff raises a series of alleged errors associated with the trial on defendants' counterclaims. He first maintains that the trial court erred when it excluded evidence relevant to determining whether he acted maliciously concerning the instant suit. This evidence concerned an easement that plaintiff had granted over his and his ex-wife's own land in 2011 in order to ostensibly help defendants sell the disputed parcel to the Genesee County Water Authority. Although the sale did not occur, defendants received approximately $80,126 in contractual damages, some of which may have been used to pay attorney fees associated with the potential sale. We review a decision whether to admit evidence for an abuse of discretion. *Edry v*

*Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Plaintiff argues that the disputed evidence would be relevant to counter the element of "malice" necessary to prevail on defendants' slander of title claims. However, "malice" in this context is not, as plaintiff argues, ill will. Slander of title "malice" pertains to whether a party, when filing a claim to real estate, (1) did so with the desire or intent to injure, or (2) committed "a wrongful act done intentionally without just cause or excuse"; in other words, intentionally with the absence of an honest or reasonable belief in his title claim. *Glieberman v Fine*, 248 Mich 8, 12; 226 NW 669 (1929). See also *Harrison v Howe*, 109 Mich 476, 479; 67 NW 527 (1896); *Stanton v Dachille*, 186 Mich App 247, 262; 463 NW2d 479 (1990).[3]

Plaintiff also argued that this evidence could be used to help support his claims that defendants acted improperly when they decided to back away from the underlying proposed settlement agreement concerning the sale of the dairy farm amongst the family members. In essence, plaintiff maintained that defendant Julie wrongfully refused to execute a mortgage on the disputed parcel in order to allow defendant John to enter into the settlement agreement that plaintiff initially sued to enforce, and this easement was designed to allow defendants an alternative means of funding the purchase of the dairy farm.

The trial court did not abuse its discretion in excluding the evidence. The purported lack of ill will this evidence would have been used to establish would only tangentially relate to the proof or disproof of "malice" under slander of title actions. Although the evidence may have tended to show that, at one point, plaintiff did something nice for defendants in an unrelated matter, it does not pertain to plaintiff's action of filing the notice of lis pendens or his intent at that point in time. And, the evidence, at least as described by plaintiff, is somewhat ambiguous concerning whether plaintiff offered the easement in order to help defendants, or instead, for his own ends in attempting to manipulate them into going along with his proposal for selling the dairy farm. Further, as found by the trial court, the danger of confusing the issues to be decided substantially outweighed the probative value of the evidence. There was a dispute about how much money defendants even received in this transaction, leading the trial court to conclude that

---

[3] As discussed *infra*, the elements of common law slander of title and statutory slander of title under MCL 565.108 can be met using proof of these different alternatives of "malice."

presentation of this issue would have taken considerable time and would have confused the jury. The trial court did not abuse its discretion.[4]

## B. EVIDENCE PERTAINING TO DEFENDANTS' CHILDREN

Plaintiff also argues that the trial court erred when it allowed defendants to present evidence of the effects of the lawsuit and accompanying stress on their children. He contends that the evidence was irrelevant, or, in the alternative, that the probative value of the evidence was substantially outweighed by the danger for unfair prejudice. In making this claim, defendant only identifies the testimony of defendant John and Lung in regard to the effect the lawsuit had on defendants' children; he does not recognize that defendant Julie testified to the same information, nor does he make any effort to argue that her testimony was improperly received. In addition, he did not object to her testimony below.

Twice during trial, plaintiff objected to the introduction of testimony that described how the instant lawsuit had affected defendants' daughters. The trial court overruled plaintiff's objections. During defendant John's testimony, he stated that the proceedings had been "tough on" his daughters and that they had shared defendants' stress. He also testified that seeing his daughters feel stress because of the proceedings had a negative effect on him. Later, Lung testified, over objections, that one of defendants' daughters called her crying, stating that defendant Julie needed to seek professional help, and that if Lung and the daughter had not intervened, Julie "probably wouldn't be here today."[5]

We find the trial court did not abuse its discretion when it admitted this evidence. Defendant John testified concerning the effect of the legal proceedings on his daughters, which in turn affected him personally. Because, as discussed in more detail below, mental anguish was an element defendants were required to prove, this testimony had a tendency to make more probable defendant John's mental anguish. Regarding Lung's testimony, plaintiff fails to recognize that the testimony was about one of defendants' daughters' observations of defendant

---

[4] Furthermore, even assuming error, plaintiff would not be entitled to relief on this point. This Court will only reverse for instructional error, or for evidentiary error, where failure to do so would be inconsistent with substantial justice. MCR 2.613(A); MRE 103(a); *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004); *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). The evidence plaintiff sought to admit showing that he gave an easement over his property to help defendants sell theirs actually undercut plaintiff's underlying assertion that he owned the disputed property, or at least had a reasonable basis to so believe. In other words, plaintiff cannot show he is entitled to relief because the jury could reasonably have viewed the evidence as supporting defendants' claims, showing that plaintiff knew he had no basis for filing either the lawsuit or the notice of lis pendens.

[5] Plaintiff mischaracterizes this portion of the testimony. He claims Lung testified that it was the daughter, not defendant Julie, who eventually ended up "getting on an anti-depressant" because she was so troubled by the legal proceedings. However, a review of the record reveals otherwise.

Julie's condition because of the legal proceedings, not the condition of the daughter. Thus, plaintiff's argument in this regard is misguided. In any event, plaintiff allowed testimony on this same subject matter by Julie without objection.

## IV. TESTIMONY BY DEFENDANTS' COUNSEL

Plaintiff claims that the trial court erred when it permitted defendants' trial counsel to testify concerning the reasonableness of his attorney fees because it allowed the attorney to take on dual roles as both an attorney and a witness, thus confusing and misleading the jurors. Plaintiff objected to counsel's testimony at trial. He also argues, for the first time on appeal, that he was prejudiced by defense counsel's testimony because the trial court failed to properly instruct the jury, during preliminary instructions, that the statements of counsel were not evidence. Plaintiff contends that in the absence of this instruction, the jurors "could well have believed throughout the entire trial that everything [counsel] said on the witness stand or as an attorney was all evidence they must consider." We review for an abuse of discretion the trial court's decision to admit counsel's testimony regarding attorney fees. See *Edry*, 486 Mich at 639. Concerning jury instructions, we ordinarily review the trial court's decision regarding jury instructions for an abuse of discretion. *Chastain v Gen Motors Corp*, 254 Mich App 576, 590; 657 NW2d 804 (2002). Here, though, where plaintiff failed to raise any objection to the instructions given, we could decline to review the matter. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Nevertheless, the issue regarding instructions is without merit, and we briefly address it below.

MRPC 3.7 provides in pertinent part as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

\* \* \*

(2) the testimony relates to the nature and value of legal services rendered in the case.[6]

Among others reasons, the purpose of the general rule prohibiting counsel from testifying "is to prevent any problems that would arise from a lawyer's having to argue the credibility and the effect of his or her own testimony, to prevent prejudice to the opposing party that might arise therefrom . . . ." *People v Tesen*, 276 Mich App 134, 143; 739 NW2d 689 (2007).

In raising a claim for slander of title, plaintiff was entitled to, and did, seek special damages; special damages have been held to include litigation costs and reasonable attorney fees. *B & B Investment Group v Gitler*, 229 Mich App 1, 9, 13-14; 581 NW2d 17 (1998). Here,

---

[6] Although plaintiff indirectly acknowledges that MRPC 3.7 allows a lawyer to testify regarding the nature and value of legal services rendered in a case, he contends that the testimony "went beyond" that allowed and unduly elevated the lawyer in the eyes of the jury.

defendants' attorney testified about the reasonableness of his fees. In addition to general biographical data, defendants' attorney testified that he had been elected president of the St. Clair County Bar Association and represented it at the state bar, that he served on the attorney grievance commission including a term as chairman of this panel, and that he had earned an AV rating from Martindale Hubble. This evidence was relevant to determine whether his hourly rate was reasonable. See *Smith v Khouri*, 481 Mich 519, 528-532; 751 NW2d 472 (2008) (noting that among the factors used to determine a reasonable fee, a trial court should consider the professional standing and experience of the attorney); MRPC 1.5(a)(7) (providing that the determination of a reasonable fee includes the attorney's "experience, reputation, and ability"). Also, this line of questioning ended when plaintiff's counsel agreed to stipulate to the reasonableness of the attorney's hourly rate. In these circumstances, plaintiff cannot show that the introduction of this testimony was erroneous or that the failure to cure any error would be inconsistent with substantial justice.

We note that plaintiff challenges the trial court's instructions in this regard. Notably, he contends that the trial court's preliminary instructions were insufficient, as they did not comport with the Model Civil Jury Instructions because they failed to inform the jurors that the attorneys' statements, commentaries, and arguments were not evidence. This argument is meritless. While plaintiff faults the trial court's preliminary instructions for failing to recite verbatim the model instructions, the court's *preliminary* instructions need not give all of the requisite model instructions verbatim. See MCR 2.513(A). Instead, such instructions, "at a minimum, shall communicate the duties of the jury, trial procedure, and the law applicable to the case as are reasonably necessary to enable the jury to understand the proceedings and the evidence." MCR 2.513(A). Moreover, and contrary to plaintiff's contentions, the trial court's preliminary instructions in this case informed the jury "that statements of the lawyers are not evidence[,]" that the jury was to decide the case "based upon the evidence[,]" which consists "of the sworn testimony of witnesses" and exhibits, and that questions asked by the attorneys "are not, themselves, evidence." Moreover, confusion, if any, concerning how to use the attorney's testimony was resolved when the trial court instructed the jury prior to the testimony, during the testimony, and at the conclusion of trial that counsel's testimony related only to the reasonableness of attorney fees. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) (citation and quotation omitted).

## V. COMMON LAW AND STATUTORY SLANDER OF TITLE

Plaintiff next argues that the trial court erred when it instructed the jury and allowed it to consider both common law and statutory slander of title when the elements are essentially the same, thus allowing the jury to award damages twice for the same violative conduct. We review jury instructions in their entirety and, even if somewhat imperfect, reversal is not required where the instructions fairly presented the issues to be tried. *Lewis v LeGrow*, 258 Mich App 175, 211-212; 670 NW2d 675 (2003). "Jury instructions should include 'all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them.' " *Cox v Bd of Hosp Managers of the City of Flint*, 467 Mich 1, 8; 651 NW2d 356 (2002), quoting *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).

"In Michigan, slander of title claims have both a common-law and statutory basis. To establish either, a claimant must show falsity, malice, and special damages." *Anton, Sowerby & Assoc, Inc v Mr C's Lake Orion, LLC*, __ Mich App __; __ NW2d __ (Docket Nos. 317935; 321827, issued March 12, 2015) (citations and quotation omitted), slip op at 5. The elements for common law slander of title and statutory slander of title are the same. *B & B Investment Group*, 229 Mich App at 8. See also *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 595; 848 NW2d 425 (2014). Special damages, one of the elements of a slander of title claim, ". . . include litigation costs, impairment of vendibility, and loss of rent or interest." *Anton, Sowerby & Assoc*, slip op at 6 (citation and quotation omitted).

While plaintiff raises concerns that the trial court permitted the jury to grant defendants a double recovery, the jury form and the trial court's instructions to the jury negate any assertions that the jury granted a double recovery in this case. As noted, special damages were an element of plaintiff's slander of title claims. See, e.g., *id*. Abuse of process damages can include "ordinary" or "actual" damages such as recovery for "shame, mortification, mental pain and anxiety . . . annoyance, discomfiture and humiliation," or other mental distress and anguish. *Veselenak v Smith*, 414 Mich 567, 574; 327 NW2d 261 (1982). See also *Marlatte v Weickgenant*, 147 Mich 266, 271; 110 NW 1061 (1907). Here, the verdict form allowed the jury to award special damages for common law slander of title and damages for emotional pain and suffering for either abuse of process or slander of title, but only so far as those damages were "over and above any special damages[.]" Thus, the verdict form separated the award of special damages from the award of damages for emotional pain and suffering, and only permitted an award of such damages that were "over and above" its award of special damages.[7] The trial court instructed the jury in a similar manner. Because the trial court's recitation of what constituted special damages was correct, and the jurors were instructed that they were only to award damages for emotional pain and suffering if they found "other damages over and above any special damages," the matter was fairly presented to the jury, thereby guarding against an award that would have represented a double recovery. See *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004); *Lewis*, 258 Mich App at 211-212.

## VI. WHETHER DAMAGES WERE EXCESSIVE

Finally, plaintiff challenges whether there was sufficient evidence to support the amount of the jury's verdict, claiming that the damages were excessive. He contends that the damages were excessive, because, among other reasons, defendants could have avoided, but chose not to,

---

[7] Although damages for emotional pain and suffering are not allowed on a slander of title claim, and the verdict form and instructions allowed the jury to award such damages if it found either abuse of process or statutory slander of title, such damages were properly awarded in this instance because the jury found that defendants had proven their abuse of process claim. Plaintiff did not object to the trial court's instructions or the verdict form in this regard, does not do so now, and does not contest defendants' entitlement to such damages on appeal, only the amount for same.

some of the litigation in this case because they sued him for abuse of process and slander of title. He also argues that there was no evidence to support either the award for special damages or the award for damages for emotional pain and suffering. Plaintiff did not raise his challenges in a motion for a new trial or in a motion for remittitur. Because of his failure to pursue this matter before the trial court, we find that plaintiff has waived this issue. *Radina v Wieland Sales, Inc*, 297 Mich App 369, 376; 824 NW2d 587 (2012); *Klapp v United Ins Group Agency (On Remand)*, 259 Mich App 467, 475; 674 NW2d 736 (2003) ("However, [plaintiff] did not file a motion for a new trial or motion for remittitur in the trial court, MCR 2.611(E), and, therefore, has waived the issue."). See also *Napier v Jacobs*, 429 Mich 222, 238; 414 NW2d 862 (1987).

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad